[No. 3918. Decided December 4, 1901.]

HENRY GEORGE, *Appellant,* v. MARY M: BUTLER *et al.,*
*Respondents.*

LIMITATION OF ACTIONS — ABSENCE FROM STATE — FORECLOSURE OF
MORTGAGES — SUBSEQUENT PURCHASER.

The absence of a mortgagor from the state will not suspend the running of the statute of limitations as to the mortgage executed by him, where he has parted with all his interest in the premises to a subsequent grantee, who has resided in the state continuously and against whom the remedy of foreclosure has been at all times available during the running of the statute.

SAME — RATE OF INTEREST.

Upon the foreclosure of a mortgage against a subsequent grantee of the mortgaged premises, who has not assumed and agreed to pay the debt, the mortgagee is entitled to only such rate of interest as is specified in the mortgage as recorded, although the notes themselves specify a greater rate.

SAME — SEPARATE NOTES — ACCRUAL OF ACTION.

The fact that a mortgage is given to secure several promissory notes, which mature at varying dates, would not postpone the running of the statute of limitations to the accrual of right of action upon the note last maturing, since the mortgage is a mere incident to the notes, and the right of action upon each note accrues as fast as it matures, and thereupon starts the running of the statute as to such note.

Appeal from Superior Court, Snohomish County.—
Hon. FRANK T. REID, Judge. Affirmed.

*Whitney & Headlee,* for appellant.

*Francis H. Brownell,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This is an action foreclosing a mortgage. It appears by the complaint that on the 16th day of February, 1892, the defendant W. E. Gaynor executed and delivered to Wyatt J. Rucker and Bethel J. Rucker certain promissory notes as follows: One note for $3,000, due eighteen months after date; and one for $1,666.67, due two years after date. By the terms of the notes each drew interest at the rate of eight per cent. per annum from date until maturity, and after maturity at the rate of three per cent. per month, payable monthly. On the same day the notes were executed, the said defendant executed a mortgage upon certain real estate in the city of Everett to secure the payment of the notes. No part of said notes has been paid except the sum of $583.34, which was paid upon the last mentioned note on the 24th day of February, 1894. It is alleged that on the 12th day of November, 1895, the said payees and mortgagees assigned and transferred the said notes and mortgage to the plaintiff in this suit, and that he is now the holder thereof. The complaint alleges that the defendant Gaynor, the maker of said notes and mortgage, was absent from the state of Washington at the time said notes became due, and that he has not returned to this state since right of action upon the notes and mortgage accrued. The respondents Lucy A. Friedlieb and Mary M. Butler subsequently, by deed, became the owners of separate portions of the mortgaged premises. Said respondents demurred to the complaint by way of general demurrer, and also by way of interposing the statute of limitations. The demurrer was by the court overruled. Respondents then answered the complaint, denying certain allegations therein, and alleged affirmatively, among other things, their ownership of portions of the mortgaged premises, and that the

action was not commenced within the time limited by law
as to said $3,000 note, in that no payments were ever made
upon said note, and more than six years elapsed since the
maturity thereof before this action was commenced. The
reply denies the affirmative allegations of the answer.
Upon these issues the cause was tried by the court, and
decree entered denying any recovery on the said $3,000
obligation, and granting a recovery upon the other note
for the amount of its face less the said payment thereon,
with interest computed at the rate of eight per cent. per
annum until the date of the decree. The plaintiff appeals
and assigns as error: (1) That the court erred in refus-
ing to allow the full amount of said $3,000 note, together
with eight per cent. per annum interest, and three per
cent. per month thereafter, compounded; (2) that the
court erred in refusing to allow upon the other note in-
terest at three per cent. per month, compounded after ma-
turity; (3) that the court erred in concluding as a matter
of law that appellant was not entitled to have his mort-
gage foreclosed for the principal and interest due on the
$3,000 note. The $3,000 note matured August 16, 1893,
and the other one matured February 16, 1894. On the
16th day of August, 1899, six years had elapsed since the
maturity of the $3,000 note, and on the 16th day of
February, 1900, a like period had elapsed since the ma-
turity of the other one. This action appears to have been
commenced between the two last mentioned dates. It is
clear that under any view of the statute of limitations
the smaller note was not barred at the time this suit was
commenced, and the right of action to foreclose the mort-
gage, as far as said note was concerned, was not barred.
Appellant urges that the $3,000 note was not barred by
reason of the absence of the maker of the note from this
state. It is true, under the showing in this record, the

note was not barred as to Gaynor, the maker, and consequently the right of action to foreclose the mortgage was not barred if Gaynor had remained the owner of the mortgaged premises. Respondents are, however, subsequent grantees of the mortgaged premises, and they have interposed the plea of the statute of limitations as to a right of action against them for the foreclosure of the mortgage.

The principal question involved here is, can the subsequent grantee of a mortgagor not obligated to pay the debt plead the statute of limitations against an action to foreclose a mortgage when the statute has not run, as against the mortgagor and maker of the note secured by the mortgage, by reason of his continued absence from the state? This precise question seems never to have been directly passed upon by this court. The relation of a subsequent grantee of a mortgagor to the running of the statute of limitations has not been the subject of harmonious decision among the courts that have considered it. Certain phases of the subject have heretofore been considered by this court. In *Damon v. Leque,* 17 Wash. 573 (50 Pac. 485, 61 Am. St. Rep. 927), a subsequent execution purchaser under a judgment against the mortgagor was made a party defendant in an action which was held to be one in foreclosure. The court in that case said:

" . . . the case turns upon the question of the right of the mortgagor to revive the mortgage after the bar of the statute had become complete, as against another party who had purchased the lands, but was not obligated to pay the debt. The authorities are conflicting upon this question, but the great weight sustains the defendants on the proposition. The mortgagor could no more revive the mortgage in such a case than he could give a new mortgage upon the land."

Again, in the case of *Stubblefield v. McAuliff,* 20 Wash. 442 (55 Pac. 637), it was held that, where a note was secured by a mortgage executed by a man and wife upon community realty payments of principal or interest thereon made by the husband without the authority of the wife, after maturity, will not extend the time of the running of the statute of limitations as against the wife. The theory upon which the first case was decided was that, when the right of action as against the debt secured by the mortgage is barred, the right of action upon the mortgage itself is also barred. The latter case was decided upon the theory that part payment by one person, being equivalent to a new contract based upon an old consideration upon which a cause of action accrues at the time of payment, binds only the person making the payment, or one whom he has authority to bind by a new contract to pay the balance.

In the case of *Board v. Presbyterian Church,* 19 Wash. 455 (53 Pac. 671), the opinion contains a statement that may upon first reading appear to put the case in conflict with *Damon v. Leque, supra,* which had been previously decided. A similar state of facts existed in the two cases. In the later case the grantee of the mortgagor sought to raise the defense of the statute of limitations in this court. The defense had not been pleaded in the court below by way of answer, and the demurrer was only upon the ground that the complaint did not state facts sufficient to constitute a cause of action. It was held that, when the attention of the court is intended to be directed to the subject of the statute of limitations by way of demurrer, it must be so specially designated in the demurrer; that being a distinct and separate ground of demurrer as provided by statute. In discussing this subject the opinion states:

"In the first place, a pleading of the statute of limitations is a privilege which is accorded by the law to the defendant—in this case the Presbyterian Church—and it can avail itself of that privilege, or answer upon the merits, or default, just as it pleases. It is not a right which defendant Walter Morgan can receive the benefit of."

The further discussion of the subject, however, shows clearly that the court did not adjudicate the question of the statute of limitations, for the reason that it was not raised in the record. The case was in fact determined upon other grounds. There is, therefore, no conflict between that case and *Damon v. Leque*. On the authority of the latter case it must be considered, therefore, at the outset of the consideration of this subject, as settled by this court, that, when a debt secured by a mortgage is barred by the statute of limitations, the mortgage is also barred, and the mortgage cannot be revived by the act of the mortgagor as against a subsequent grantee without his consent. In the case at bar the full statutory period had run against the mortgage debt if the debtor had remained within the state. Section 4808, Bal. Code, provides as follows:

"If the cause of action shall accrue against any person who shall be out of the state or concealed therein, such action may be commenced within the terms herein respectively limited after the return of such person into the state, or after the time of such concealment; and if, after such cause of action shall have accrued, such person shall depart from and reside out of this state, or conceal himself, the time of his absence or concealment shall not be deemed or taken as any part of the time limited for the commencement of such action."

By reason of the above provision the operation of the statute of limitations was suspended during the absence of the debtor from the state, and it is therefore clear that

the right of action against him is not barred. The statute having been suspended as to the right of action against the debtor, was it for that reason suspended as to the right of action upon the mortgage against the susequent grantee of the mortgaged land? The rule adopted by this court, as far as it has passed upon the right of a grantee to interpose the defense of the statute of limitations against an action to foreclose a mortgage, seems to be in harmony with that adopted by the supreme court of California. In *Wood v. Goodfellow,* 43 Cal. 185, a question similar to the one involved here was under consideration. The court there held that there is no difference in principle between the suspension of the running of the statute of limitations resulting from an express waiver and one caused by voluntary act in absenting one's self from the state. In order that the views and reasoning of the California court may more fully appear, we quote extensively from the opinion in said case, as follows:

"If Goodfellow still held the equity of redemption, and if the action was against him alone, it is evident his absence from the state would afford a sufficient answer to the plea of the statute of limitations. So long as he retained the equity of redemption, and no other rights had intervened, by reason of subsequent liens or incumbrances, he had the power, by written stipulation under the statute, to extend the time within which the debt should not be barred, or he might suspend the running of the statute by his absence from the state. So long as his rights only were to be affected, it was within his power to suspend the operation of the statute, either by a written stipulation or by absenting himself from the state. But this court has repeatedly decided that as against subsequent incumbrances, or a subsequent holder of the equity of redemption, the mortgagor has no power by stipulation to prolong the time of payment, or in any manner increase the burdens on the mortgaged premises. (*Lord v. Morris,* 18

Cal. 482; *McCarty v. White,* 21 Cal. 495; *Lent v. Morrill,* 25 Cal. 500; *Low v. Allen,* 26 Cal. 141; *Lent v. Shear,* 26 Cal. 361; *Barber v. Babel,* 36 Cal. 11; *Sichell v. Carillo,* 42 Cal. 493.) . . . The argument [of counsel] assumes that a subsequent holder of the equity of redemption, or a subsequent incumbrancer, stands in the shoes of the mortgagor, and cannot invoke the aid of the statute in the given case, because *he* could not. But it is the settled doctrine of this court, as will be seen from the authorities above cited, that when third persons have subsequently acquired interests in the mortgaged property they may invoke the aid of the statute as against the mortgage, even though the mortgagor, as between himself and the mortgagee, may have waived its protection; and we see no difference in principle between a suspension of the running of the statute resulting from an express waiver, and one caused by his voluntary act in absenting himself from the state. In either case it is the sole act of the mortgagor, performed at a time when he had lost his rightful control over the property, and when other interests had intervened, which ought not to be dependent for their protection on the conduct of the mortgagor. When the mortgagor has parted with his title to the property, and ceased to have any interest therein, those who have succeeded to his rights stand in the same relation to the mortgagee as if they had originally made the mortgage on their own property to secure the debt of the mortgagor. The mortgagor has no interest in the property, nor are they under obligation to pay his debt. Their property, however, is bound as collateral security for its payment, under the mortgage, which is a contract in writing, by which the property is pledged as a security for the debt. The mortgage, in such a case, has the same effect in law as if it had been originally made, as a separate instrument, by the parties succeeding to the rights of the mortgagor to secure his debt."

In *Anderson v. Baxter,* 4 Ore. 105, a similar rule was announced. The court in that case observed:

"If the relief sought had been a decree *in personam,* the analogy would be sufficiently complete, and the period of such absence not be included as any part of the time limited. Such absence in that case would suspend, or at least affect the party's remedy, which is the only reason for the exception. In this case, the plaintiff can claim no remedy, except to have the property in question adjudged to be sold to satisfy the debt secured thereby. It was in effect a proceeding *in rem,* and the absence of the mortgagors did not interfere with the prosecution of his remedy, or render it less effectual. If the absence of the mortgagors in this case prevented the statute of limitations from running, then the same result would have followed if the premises had been sold to defendant the next day after the execution of the mortgage, and he had gone into possession and remained in possession thereof; and in fact, the statute would never run so long as the mortgagors should remain away from the state. Where a personal obligation is sought to be enforced, the provisions of § 16 referred to, would undoubtedly apply; but where the only remedy is against the property, which has a fixed *situs,* the construction contended for would be unreasonable."

It is suggested that the last named case should be distinguished, because the remedy there was against the land alone, there being no personal obligation to pay the debt; and that when the mortgagor had conveyed the property, there was no longer any cause of action against him, and necessarily his absence from the state could not affect the running of the statute. We are not, however, impressed with the distinction sought to be made. If a personal obligation exists, and the maker thereof leaves the state, the remedy under the mortgage remains against the property, and may be enforced at any time when the obligation is due. It is with this remedy against the property alone that the grantee of the mortgaged premises is concerned. It is further suggested that the case of *Anderson v. Bax-*

*ter, supra,* is inconsistent with *Cross v. Allen,* 141 U. S.
528 (12 Sup. Ct. 67), which was a case that went up to
the supreme court of the United States from Oregon, and
involved the consideration of the laws of Oregon on certain phases of the statute of limitations.   The supreme
court of Oregon had determined that under the statutes
of that state a payment made upon a note after maturity
by one joint obligor had the effect to bind the co-obligor
or surety, and the question before the supreme court of
the United States was the effect of the state law as construed by the supreme court of the state.   We do not see
that the cases are necessarily inconsistent.   *Cross v. Allen* involved the question of the power of one obligor by
his act to continue an obligation against a co-obligor, who
was bound equally with himself on the original obligation.
But in *Anderson v. Baxter* the question was whether the
act of the debtor in absenting himself from the state could
affect the rights of one who was never in any way bound
with him on an obligation.   The difference was such that
the supreme court of Oregon might adopt the two views
as applied to the different facts without any inconsistency.
This court, in *Stubblefield v. McAuliff, supra,* declined to
follow *Cross v. Allen* as declaring a rule applicable to this
state.   In *Fowler v. Wood,* 28 N. Y. Supp. 976, the
supreme court of New York seems to have announced a
rule in harmony with the California and Oregon cases.
The opinion says:

"Nothing appears in the evidence to arrest the operation of the statute as to the appellant, except the fact
that, before the expiration of 20 years, Ferris removed
from the state.   This act suspended the running of the
statute as against him.   Whether it also suspended the
statute as to the cause of action against the owner of the
mortgaged property is a question that, so far as my ex-

amination goes, has not prior to this case been decided in
this state. . . . The Code provides that an action
upon a sealed instrument must be commenced within 20
years after the cause of action accrued; but if, after a
cause of action has accrued against the person, he departs
from the state, etc., the time of his absence is not a part
of the time limited for the commencement of the action.
This provision very plainly has reference solely to a cause
of action against the person who departs from the state.
It does not suspend the operation of the statute as to a per-
son liable on the same cause of action, who continues to
reside within the state; nor was it intended to extend the
time generally within which an action might be brought
for the debt or the enforcement of a security collateral to
the debt. It affects the remedy solely against the person
who departs from the state."

We are not aware that the above case was ever reviewed
by the court of appeals of New York. We are aware, as
heretofore indicated, that some other courts have adopted
a different rule from that announced in the above cases.
But viewing the subject, as we do in connection with prior
decisions of this court, we do not find it necessary to re-
view those cases here. This court having already adopted
the same view as that of the supreme court of California,
—that a debtor cannot revive a debt once barred as against
a subsequent grantee of mortgaged premises without his
due consent thereto,—we are disposed to adopt here the
reasoning of that court in *Wood v. Goodfellow, supra,* as
applied to the effect of the mortgagor's absence from the
state upon the running of the statute of limitations. It
is there held, as shown above, that there is no difference
in principle between a suspension of the statute by express
waiver and that caused by the mortgagor's voluntary act
in absenting himself from the state; that in either case
it is the sole act of the mortgagor, performed at a time

when he had lost his rightful control over the property, and when other interests had intervened which ought not to be dependent for their protection upon the conduct of the mortgagor. This is an action to foreclose a mortgage, and it therefore comes within the provisions of § 4798, subd. 2, Bal. Code, which limits the period to six years for bringing "an action upon a contract in writing or liability, express or implied arising out of a written agreement."

More than six years having elapsed between the maturity of the $3,000 note and the commencement of this suit, the action is, therefore, barred as to the amount represented by said note, unless, for further reasons urged, it is excused from the operation of the statute. These we will now examine.

Appellant further urges that this mortgage was given to secure the payment of an entire sum, payable by installments, and that the action upon the mortgage is not barred as to any portion of the debt until the statute has fully run against the last installment. It is also suggested that the mortgage contains a covenant to pay the whole debt. The covenant is, however, limited to payment according to the terms of the notes. In this state a mortgage is a mere lien upon the land to secure the payment of the debt. The debt secured in this case was evidenced by certain promissory notes or obligations described in the mortgage, which severally matured at different times. Each note was the foundation for a separate cause of action, and suit might have been brought upon each note as it matured without foreclosure, or the mortgage might have been foreclosed as to each note at any time after its maturity. Section 4796, Bal. Code, provides:

"Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued. . . . "

We think the rule of limitations must be held to apply to each note as it matures. The mortgage being a mere incident to the note, and its only purpose being to secure the same, it has fulfilled its purpose, as far as the debt represented by the note is concerned, when there is no longer a right of action upon the note. We think, therefore, that this action is barred as to the $3,000 note, and we need not discuss other objections urged as to why appellant cannot maintain an action thereon.

The remaining question is, did the court err in refusing to allow interest in the full sum demanded by appellant? As heretofore stated, the notes were made to draw three per cent. per month after maturity, compounded monthly. Respondents' counsel assert that the rate named is the equivalent of 65 7-10 per cent. per annum. The mortgage contains no reference to any increased rate of interest. It describes the notes as bearing eight per cent. interest from date. Section 4535, Bal. Code, provides as follows:

"All deeds, mortgages, and assignments of mortgages, shall be recorded in the office of the county auditor of the county where the land is situated, and shall be valid as against *bona fide* purchasers from the date of their filing for record in said office; and when so filed shall be notice to all the world."

We think a reasonable deduction from the language of the above statute is that subsequent purchasers, who are notified of the existence of the mortgage by its record, have a right to rely upon the terms of the mortgage so recorded. We are not called upon to pass upon this question as between the maker of the notes and the mortgagee.

No judgment *in personam* is here sought. Judgment in foreclosure against the lands in the hands of the grantees is all that is demanded. We, therefore, think the just rule is that the mortgaged lands in the hands of subsequent purchasers are not bound for a greater rate of interest than that stipulated in the mortgage as recorded, unless the purchaser may have assumed and agreed to pay a greater rate that may be stipulated in the notes, but not shown in the mortgage as recorded. 20 Am. & Eng. Enc. Law, p. 599; *Whittacre v. Fuller,* 5 Minn. 508; *Gardner v. Emerson,* 40 Ill. 296; *Gilchrist v. Gough,* 63 Ind. 576 (30 Am. Rep. 250). In this case the court allowed the amount of interest as shown by the mortgage of record, which, we think, was right.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON, DUNBAR, WHITE, AN-DERS and MOUNT, JJ., concur.