[No. 5404. Decided March 31, 1905.]

W. D. PERKINS, *Appellant*, v. W. E. BAILEY *et al.*,
*Respondents.*[1]

LIMITATION OF ACTIONS—MORTGAGES—ABSENCE OF MORTGAGOR FROM STATE—LIEN BY ATTACHMENT UPON NOTES OLDER THAN MORTGAGE DEBT. The statute of limitations does not run against a mortgagor during his absence from the state, while the legal title to the mortgaged property remains in him, so as to permit the holder of unsecured notes, older than the mortgage notes, to acquire a superior lien upon the mortgaged property by attachment, where the mortgagee promptly intervened in the attachment suit and proceeded to foreclose his mortgage.

SAME—INTERVENTION—JUDGMENT WITHOUT NOTICE TO INTERVENER. In such a case, a default judgment in the attachment case, entered against the principal defendant without notice to the intervener, declaring the attachment lien superior to the mortgage, and an execution and sale thereunder, are properly vacated, since the intervener is entitled to notice of all proceedings; and such a judgment, execution, and sale cannot be pleaded to defeat the lien of the mortgage.

[1]Reported in 80 Pac. 177.

Appeal from a judgment of the superior court for King county, Bell, J., entered June 13, 1904, upon findings in favor of the intervener, after a trial on the merits before the court without a jury, in an action on a promissory note, decreeing the priority and foreclosure of intervener's mortgage. Affirmed.

*John F. Reed* and *John P. Hartman,* for appellant.

*Peters & Powell,* for respondent Edward Bailey.

CROW, J.—On September 20, 1902, appellant, W. D. Perkins, commenced this action in the superior court of King county, Washington, to recover from the respondent W. E. Bailey the sum of $300, and interest, alleged to be due on a certain promissory note, originally made and delivered by one R. H. Goldie to said W. E. Bailey, for $1,000 and interest, said note being dated February 16, 1892, and by its terms falling due on May 16, 1892. It was alleged in the complaint that said W. E. Bailey had, immediately after the execution and delivery of said note, by written indorsement thereon, guaranteed the payment of said note, and had waived protest and notice of protest for nonpayment thereof. Action on the note was apparently barred by the statute of limitations, but in the complaint appellant alleged: "That since the first day of January, 1897, defendant has been absent from, and has continuously resided without the state of Washington."

At the time of the commencement of this action, appellant caused a writ of attachment to be issued, on the ground of the nonresidence of W. E. Bailey, and on September 20, 1892, the sheriff of King county, under said writ, levied upon and attached all right, title, and interest of the respondent W. E. Bailey in and to lots 5 and 8, in block 88, Terry's Second Addition to the city of Seattle.

Using said attachment as a basis for service by publication, appellant, by proper proceedings, commenced such service, the first publication being made on September 26, 1892. Before the service by publication was completed, or any further proceedings were had, the intervener, respondent Edward Bailey, a brother of respondent W. E. Bailey, petitioned the court for leave to file a petition or complaint in intervention. His petition being granted, on November 21, 1902, he filed his petition. the same beir in the nature of a cross-bill.

The intervener alleged, that on March 5, 1891, W. E. Bailey had executed and delivered to the Guarantee Loan & Trust Co., at Seattle, Washington, his two certain promissory notes of that date, each for the sum of $4,500, payable January 1, 1896, with eight per cent interest from date, payable semi-annually; that on said 5th day of March, 1891, for the purpose of securing the payment of these two notes, said W. E. Bailey executed and delivered to said Guarantee Loan and Trust Company one mortgage on lot 5, and one other mortgage on lot 8, in said block 88, Terry's Second Addition, which, it will be observed, was the same real estate attached by appellant in this action. The intervener made all the usual allegations necessary in a foreclosure action, and also alleged that W. E. Bailey had been continuously absent from the state of Washington since December, 1893. He then pleads the statute of limitations against appellant's note, and prays for the usual equitable relief in a foreclosure suit. The respondent W. E. Bailey, by answer, entered his appearance to the petition and cross-complaint of the intervener, admitting each and every allegation thereof.

On December 10, 1902, appellant interposed a special and general demurrer to the cross-complaint, the special demurrer being based on the statute of limitations. The demurrer being overruled, appellant answered, but his

answer was afterwards withdrawn by stipulation, as here-
inafter stated. On January 17, 1903, without any notice
to the intervener, Edward Bailey, appellant caused an
order of default to be entered against W. E. Bailey, who
had failed to appear or plead to the complaint, and on the
same day judgment was entered in favor of appellant
against said W. E. Bailey, on the note described in the
complaint, for $697.40, and costs, said sum being ad-
judged to be a lien on the real estate above described un-
der appellant's attachment. On January 19, 1903, ap-
pellant caused an execution and order of sale to be issued
on said judgment, and on March 7, 1903, the sheriff sold
said real estate to appellant. The sale having been con-
firmed, and no redemption being made, the sheriff, on
March 8, 1904, executed and delivered to appellant a deed
for said real estate. All of these proceedings, commenc-
ing with the default and judgment on January 17, 1903,
and ending with the execution and delivery of the sheriff's
deed on March 8, 1904, seem to have been perfected by
appellant without notice to the intervener, and, so far as
the record shows, without any actual knowledge thereof
on the part of the intervener. In the mean time, the ac-
tion seems to have rested without any other or further
proceedings being taken by either party. On March 17,
1904, shortly after the execution of the sheriff's deed, a
written stipulation between appellant and the intervener
was made and filed, reading as follows:

"It is stipulated and agreed between the plaintiff, by
his attorneys Reed & Rutherford, and the intervener, by
his attorneys, Peters & Powell, that the plaintiff may with-
draw the answer heretofore filed to the intervener's peti-
tion and substitute and file therefor another, the receipt
of which is hereby accepted by intervener, and that the
intervener's reply to the answer of the said plaintiff to the
said petition may stand and remain as the reply to plain-
tiff's answer to said petition of intervener."

In pursuance of this stipulation, appellant, on March
17, 1904, filed what he termed an amended answer, in
which he pleaded the commencement of this action by him-
self, the issuance and levy of the writ of attachment, the
entry of his judgment against W. E. Bailey, the execu-
tion, sale, confirmation of sale, and execution, delivery,
and record of the sheriff's deed. He then proceeds to
make the following allegation:

"(2)   That the cause of action set up in intervener's
petition and cross-bill herein arose more than six years
prior to the date of the levy made by said sheriff under and
by virtue of said writ of attachment herein, to wit: Sep-
tember 20th, 1902, and no payments were ever made upon
said notes referred to in intervener's petition and cross-
bill; that the order granting said Edward Bailey permis-
sion to intervene in this action was made November 21,
1902; that intervener's action to foreclose said mortgages
was not commenced within the time limited by law, and
that more than six years have elapsed since the said notes
and mortgages, referred to in paragraphs one, two, three,
and four in intervener's petition and cross-bill (matured),
before said Edward Bailey commenced this action in in-
tervention herein."

Trial being had, on May 19, 1904, the court made and
filed findings of fact, showing that W. E. Bailey executed
the notes and mortgages in the cross-bill mentioned; that
the same had been assigned to the intervener on October
23, 1891, for a valuable consideration; that no payments
had been made thereon; and in the findings the following
are included:

"(6)   That on the 20th day of September, 1902, the
plaintiff, W. D. Perkins, instituted suit in this court against
the defendant William E. Bailey upon a promissory note
made by one R. H. Goldie to the defendant William E.
Bailey in the principal sum of one thousand dollars, with
interest, maturing in May, 1893; which said note plaintiff
acquired by purchase from the receiver of the Merchants

National Bank of Seattle, and in aid of such suit, the plaintiff caused the interest of the said William E. Bailey in the lands under the intervener's mortgage above mentioned to be attached by the sheriff of King county.

"(7)   That on the 17th day of January, 1903, a default judgment was rendered and entered in the above suit in favor of the plaintiff W. D. Perkins and against the defendant Willam E. Bailey, for the balance unpaid upon said note in the sum of six hundred ninety-seven and 40-100 dollars with interest at 12% per annum from date until paid, and decreeing the plaintiff's attachment a lien upon the interest of said William E. Bailey in the lots · hereinabove named by reason of said attachment, and thereafter the said interest of the said Bailey in said lands was levied upon by the sheriff of King county, under the aforesaid judgment, at the instance of the plaintiff, and was bought in by the plaintiff for the amount of his judgment; no money being paid therefor, and a sheriff's deed was issued to the plaintiff for said lands on the 8th day of March, 1904.

"(8)   That the intervener, Edward Bailey, filed his intervention herein, upon leave of this court first obtained, on November 21, 1902, and neither he nor his counsel thereafter had any notice whatsoever of the application by the plaintiff for default, or for judgment, or for sale of said property, or for confirmation of sale, or of any of said steps.

"(9)   That the said notes and mortgages were executed and delivered by the said William E. Bailey to the Guarantee Loan & Trust Company, and by the latter sold, assigned and transferred to the intervener, Edward Bailey, for full value, and in good faith, and said Edward Bailey was not guilty of laches or unreasonable delay in foreclosing the same, but proceeded with all possible dis-patch to foreclose said mortgage upon learning of the attachment of the plaintiff W. D. Perkins."

Upon the findings, the court made and filed its conclusions of law, and entered judgment and decree, (1) in favor of the intervener for the amount due on his notes,

and ordering his mortgage foreclosed; (2) in favor of appellant for the amount due on the note described in his complaint; (3) adjudging the intervener's. mortgage to be prior to the lien of appellant; (4) directing a sale of the mortgaged real estate; and (5) vacating and declaring to be null and void the judgment entered in favor of appellant on January 17, 1903, and the execution and sale had in pursuance thereof. From this judgment the plaintiff, W. D..Perkins, has appealed.

We have made quite a lengthy and comprehensive statement in order that the question raised by the appeal, and hereinafter discussed, may be the more readily understood, especially in the light of previous holdings of this court, and the peculiar facts here involved. Attention is called to the fact that, had the respondent W. E. Bailey never absented himself from the state of Washington, the note held by appellant would have been barred at all times after May 16, 1898, or for a period of four years, four months, and four days, at the date of the commencement of this action; and that the notes held by the intervener and respondent, Edward Bailey, would have been barred at all times after January 1, 1902, or for a period of only ten months and twenty days, at the time he filed his petition and cross-bill herein.

The only question raised by appellant is the statute of limitations. He contends that, as he had obtained a lien by attachment upon the real estate above described, prior to any attempt by the intervener, respondent Edward Bailey, to foreclose his mortgages, the appellant, as such holder of a subsequent valid attachment lien, was entitled to plead the statute of limitations against the intervener's mortgages. Appellant contends that, while the absence of the respondent W. E. Bailey from the state of Washington arrested the running of the statute of limitations

as to himself, it did not arrest the running of said statute as to respondent Edward Bailey; and urges that this court has held that absence of a mortgagor from the state will not suspend the running of the statute of limitations, as against subsequent grantees, incumbrancers, or holders of the equity of redemption; and in support of this contention he cites the following decisions of this court: *Damon v. Leque,* 17 Wash. 573, 50 Pac. 485, 61 Am. St. 927; *George v. Butler,* 26 Wash. 456, 67 Pac. 263, 90 Am. St. 756, 57 L. R. A. 396; *Denny v. Palmer,* 26 Wash. 469, 67 Pac. 268, 90 Am. St. 766; *Raymond v. Bales,* 26 Wash. 493, 67 Pac. 269; *Hanna v. Kasson,* 26 Wash. 568, 67 Pac. 271; *De Voe v. Rundle,* 33 Wash. 604, 74 Pac. 836.

We have carefully examined all of these authorities, find them perfectly harmonious, and are well satisfied with the principles therein enunciated. Most of these cases cite, and are based upon, the doctrine announced in the leading case of *Wood v. Goodfellow,* 43 Cal. 185, in which the court says:

"If Goodfellow [the mortgagor] still held the equity of redemption, and if the action was against him alone, it is evident his absence from the state would afford a sufficient answer to the plea of the statute of limitations. So long as he retained the equity of redemption, and no other rights had intervened, by reason of subsequent liens or incumbrances, he had the power, by written stipulation under the statute, to extend the time within which the debt should not be barred, or he might suspend the running of the statute by his absence from the state. So long as his rights only were to be affected, it was within his power to suspend the operation of the statute, either by a written stipulation or by absenting himself from the state. But this court has repeatedly decided that as against subsequent incumbrancers, or a subsequent holder of the equity of redemption, the mortgagor has no power, by stipulation, to prolong the time of payment, or in any manner increase the burdens on the mortgaged premises."

Appellant contends that, as the logical result of the rulings of this court in the Washington cases above cited, and of the language of the California court in *Wood v. Goodfellow*, so frequently approved and followed, it should now be held by us that, as he had obtained his lien by attachment before the intervener, respondent Edward Bailey, attempted to foreclose his mortgages, he is entitled to plead the statute of limitations as against said mortgage liens.

Under the peculiar facts of this case, we do not think appellant is in a position to successfully make this contention. It will be observed that, in all the cases above cited, including *Wood v. Goodfellow, supra,* the subsequent title, interest, or lien held by the third party arose out of claims or demands of later date than the mortgage—or in other words, did not arise out of claims more stale than the mortgage lien itself. In *Wood v. Goodfellow, supra,* the claim on behalf of which the statute was pleaded grew out of the foreclosure of a mortgage of later date. In *Damon v. Leque, supra,* the Leques held title subsequently acquired under a judgment, execution, and sale against Iverson, the original mortgagor. In *George v. Butler, supra,* the respondents Butler and Friedlieb had become owners of separate portions of the mortgaged property, holding the title. In *Raymond v. Bales, supra,* the appellant Bales had, several years after the execution of the mortgage, recorded a judgment against the mortgagor, upon which judgment execution had been issued and the mortgaged premises sold to Bales. So in *Hanna v. Kasson, supra,* the respondent Kasson had become owner of the mortgaged land by mesne conveyances, and held the title. And in *De Voe v. Rundle, supra,* the appellant Rundle had, long after the execution of the mortgage, acquired a valid judgment lien against the real estate on which foreclosure of a mortgage was sought.

It is contended, however, that appellant acquired his attachment lien after the execution of the intervener's mortgages, and prior to the commencement of the foreclosure. While this is true, the facts are that, when appellant commenced this action, he knew W. E. Bailey had been absent from the state many years, and so alleged in his complaint, for the express purpose of preventing the action on his own note being barred by the statute. This certainly shows that he had, at that time, actual knowledge and notice that the notes of the intervener, respondent Edward Bailey, were not barred. The record title to the real estate still remained in the name of the original mortgagor, W. E. Bailey, and, by reason of his absence, the notes and mortgages were not barred as against him.

In *Denny v. Palmer, supra,* this court, while recognizing the rule announced in all previous Washington cases on this question, held that the appellant Palmer could not plead the statute of limitations against a previous mortgage. It appeared that Palmer had acquired title to the mortgaged real estate by deed from the mortgagor, which he did not record until several days after the action of foreclosure had been commenced. Speaking through Hadley, J., this court said:

"Appellant's answer to the amended complaint alleges that the deed by which the mortgaged premises were conveyed by the mortgagor to appellant was executed on the 23d day of December, 1893, but was not filed for record until the 19th day of April, 1900. The original complaint in this cause was filed April 13, 1900. Appellant's deed was not filed for record until six days after this suit was actually commenced. Respondent therefore had no constructive notice of the existence of appellant's rights in the mortgaged premises until after he had actually commenced this suit. There is no averment in the answer that respondent or his assignor had, prior to that time, received any actual notice of the fact that such a convey-

ance had been made, and nothing appears in the record showing such actual notice. It appears, therefore, that respondent did not know that he held a cause of action against appellant prior to the time the deed was recorded. He knew he held a cause of action against the mortgagor, as to which the statute of limitations had not run because of the mortgagor's absence from the state, but he could not, under any principle of reason and justice, be chargeable with notice that appellant had any interest in the land, unless appellant's deed had been of record, or some actual knowledge of its existence had been brought home to him or his assignor. We think under such circumstances it should be held that when the deed has not been recorded within the ordinary limitation period in ample time to permit the bringing of the action within that period, or when actual knowledge of the conveyance has not been brought home to the mortgagee or his assignee in sufficient time to permit the action to be brought within such period, then the grantee should be estopped from pleading the statute against an action which is promptly begun, and within reasonable time after constructive notice of the grantee's rights has been given by filing the deed, or after the mortgagee or his assignee has received actual notice of the conveyance. This principle was sustained in *Spaulding v. Howard,* 121 Cal. 194, 53 Pac. 563."

Appellant for many years had every opportunity for proceeding upon his note, and attaching the interest of respondent in the real estate involved herein, but he delayed taking any such action. For what reason? Evidently he was waiting for the arrival of the time when the intervener's note would be at least six years past due. During all of this time, he had constructive notice of the mortgage lien, and, also, of the fact that the record title was still in W. E. Bailey. He also had actual notice that the mortgages were not .barred by the statute of limitations, because he knew of the absence of said W. E. Bailey from the state. Now, when he commenced this action, and when the intervener promptly appeared, before answer day, and

sought to foreclose his mortgages, should the intervener be subjected to a successful plea of the statute of limitations by appellant, simply because appellant had obtained an attachment lien in the manner and at the time above stated? We think not. Appellant had the more stale claim of the two, and, as the court found, the intervener was not guilty of laches or unreasonable delay, but proceeded to foreclose with all possible dispatch, on learning of the attachment. The record suggests that appellant himself was not entirely satisfied to base his right to plead the statute of limitations solely upon his mere attachment lien, for, without notice to the intervener, he entered judgment, issued execution, sold the real estate, obtained a sheriff's deed, and then, by what he termed an amended answer, pleaded the title thus acquired as the basis of his further plea of the statute of limitations against the mortgages.

We think the trial court was right in vacating the judgment entered on January 17, 1903, and also in vacating the sale and sheriff's deed obtained in pursuance thereof. When the intervener had once appeared in this cause, he was entitled to notice of all proceedings thereafter taken. Said judgment, execution sale, and sheriff's deed having been set aside and vacated, appellant's rights must rest entirely upon the lien obtained under his writ of attachment, which attached only the actual interest of W. E. Bailey in and to said real estate. As above suggested, at the time appellant caused his attachment to be levied, he knew of the absence of W. E. Bailey, and that the mortgage liens were not barred. His lien under his writ of attachment was therefore subject to the lien of the mortgage. Our position herein is in full harmony with the rule announced by this court in the recent case of *White v. Krutz,* 37 Wash. 34, 79 Pac. 495, wherein Fullerton, J., said:

". . . a mortgagor, who still retained his ownership in the mortgaged property, could make a valid contract of extension of the original mortgage, which would be binding upon his subsequent grantee, whether the grantee takes with or without notice of such extension."

If such an extension agreement could be made by a mortgagor still holding the title, then certainly the appellant's lien under his writ of attachment affected only the actual interest of W. E. Bailey in and to the real estate, and, as above suggested, was subject to the intervener's mortgage liens. While statutes of limitation are favored as statutes of repose, we do not think, under the facts existing here, that the mortgage liens of the intervener should be cut off by appellant's plea of the statute of limitations. As has been said by respondent Edward Bailey, in his answer brief:

"It would be a harsh doctrine indeed to say that appellant could rest upon his unsecured claim for nine years and oust respondent, who sues in less than seven years upon a secured claim, while as to both the statute was dormant by reason of the debtor's absence. This would make the law a pitfall rather than a relief to the mortgagee."

We think there is no error in the record and the judgment of the superior court is affirmed.

MOUNT, C. J., DUNBAR, and RUDKIN, JJ., concur.

HADLEY and FULLERTON, JJ., took no part.