---

[No. 5703.   Decided November 27, 1905.]

A. W. THORNLEY *et al., Appellants,* v. JULIA L. ANDREWS
*et al., Respondents.*[1]

APPEAL—STATEMENT OF FACTS—ATTACHING EXHIBITS AND DEPOSI-
TIONS AT TIME OF SETTLEMENT.   Exhibits appropriately referred to in
the statement of facts, and part of the records on file, need not be
attached to the statement at the time it is served, but it is sufficient
if they are attached at the time the statement is certified; and a state-
ment to the effect that they were received in evidence is an appropri-
ate reference thereto.

LIMITATION OF ACTIONS—ADVERSE POSSESSION—GRANTEE OF MORT-
GAGOR HOLDING ADVERSARY TO MORTGAGEE — WHEN RIGHT ACCRUES.
Where the owner of three lots, after mortgaging one lot in 1890, sold
the other two lots, pointing out the supposed boundary line as indi-
cated by stakes, which in fact included a two and one-half foot strip
of the mortgaged lot, and such strip was taken possession of and
adversely held by the purchasers for a period of more than ten years,
and meanwhile the mortgage was foreclosed without making the pur-
chasers parties to the action, and the right of action for the fore-
closure of the mortgage was subsequently barred by lapse of time as
to the purchasers in possession of the strip, their title to the strip
by virtue of adverse possession is complete; since the statute begins
to run as against the mortgagors and their successors at the date of
the taking of possession, and is complete in ten years, and as against
the mortgagee and his successors in interest, it begins to run at the
date the mortgage is due (no payments being made) and is complete
in six years.

[1] Reported in 82 Pac. 899.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered October 27, 1904, upon the verdict of a jury rendered in favor of the defendants, after a trial on the merits, in an action of ejectment. Reversed.

*Ira A. Town,* for appellants.

*Thomas D. Hitchcock* and *Emmett 'N. Parker,* for respondents.

MOUNT, C. J.—This action was brought by appellants, to recover from respondents a strip of land about two and one-half feet wide along the north side of lot 8, in block 12, Catlin's addition to Tacoma. The appellants in their complaint alleged, that they are the owners of said strip of land by reason of adverse possession for a period of more than ten years prior to July 15, 1903; that on said date the respondents wrongfully and by force dispossessed the appellants of said strip of land to the damage of appellants in the sum of $400. Respondents denied these allegations of the complaint, and alleged ownership in themselves. On these issues the cause was tried to the court and a jury. A verdict was rendered in favor of respondents. Appellants prosecute this appeal from a judgment rendered on the verdict.

At the time the proposed statement of facts on appeal was filed and served upon respondents' attorneys, it contained none of the exhibits or depositions in the case. At the time the statement of facts was settled, the court, at the request of appellants and over the objections of respondents, attached to the statement all the exhibits and depositions in the case, and thereupon certified the statement of facts as containing all the facts. Respondents now move to strike all the exhibits and the depositions which were not attached to the proposed statement of facts at the time it was served, for the reason that respondents had no notice that appellants would ask the court to attach such exhibits or depositions to the statement of facts. An examination of the proposed statement of facts

which was served upon respondents discloses that all the exhibits and depositions which were attached to the statement when it was certified were referred to therein as having been offered and received in evidence and filed in the cause. It was not necessary for the appellants to attach to the proposed statement of facts copies of the exhibits or depositions which were already a part of the record, for the statute, at Bal. Code, § 5059, expressly provides that,

"Depositions and other written evidence on file shall be appropriately referred to in the proposed bill or statement, and when it is certified the same or copies thereof, if the judge so direct, shall be attached to the bill or statement and shall thereupon become a part thereof."

It was only necessary, therefore, for the proposed statement to appropriately refer to such depositions or exhibits. A statement in a proposed statement of facts, to the effect that a certain exhibit or deposition was offered and received in evidence, would be an appropriate reference thereto. *Suksdorf v. Humphrey*, 36 Wash. 1, 77 Pac. 1071; *O'Neile v. Ternes*, 32 Wash. 528, 73 Pac. 692. There is no merit in the motion, and it is therefore denied.

Upon the trial of the cause, it appeared that lots 7, 8, and 9 of block 12, Catlin's addition to Tacoma, are adjoining lots, lying side by side. Lot 7 is to the north of lot 8, lot 8 is north of lot 9. In the year 1890 all of these lots were owned by R. F. Wells and wife. At that time Wells and wife built two houses upon the lots; one house was built on lots 8 and 9, and the other house was built upon lot 7. In August, 1890, Wells and wife, gave a mortgage upon lot 7 to secure a promissory note due August 23, 1893. On November 11, 1890, Wells and wife sold lots 8 and 9 to appellants, who took immediate possession thereof. At the time of the sale of lots 8 and 9 by Wells to appellants, the lines of the lots were pointed out as running to certain stakes then existing in the ground. Appellants took possession of all the ground pointed out to them as belonging to lots 8 and 9, which ground

included the strip of lot 7 now in dispute. They planted a hedge fence along the line which was pointed out as the line between lots 7 and 8, and continually thereafter until July, 1903, cultivated said strip in lawn, trees, and shrubs.

On November 12, 1890, Wells and wife sold lot 7 to Henry Young and wife, subject to the mortgage above named. In 1895 the mortgage given by Wells and wife was foreclosed against the mortgagors and Young and wife. Appellants, who were at that time in the actual possession of the strip of land in dispute, were not made parties to the foreclosure. In June, 1901, respondents acquired the title obtained on foreclosure, and entered into possession of lot 7 except the strip in dispute. Up to July, 1903, the mortgagors and their grantors Young and wife and these respondents acquiesced in the possession held by the appellants. In that month, however, respondents had lot 7 surveyed, when it was discovered that appellants were occupying a strip thereof about two and one-half feet wide along the south side of said lot. Respondents thereupon evicted appellants from said strip, and built a fence upon what they claim is the true line between lots 7 and 8. Appellants thereupon brought this action.

The pertinent question in the case is, did the period of adverse possession begin to run in favor of appellants from the time they took possession of the strip of land in question in November, 1890, or did it begin to run only from the time the mortgage made by Wells and wife became due in August, 1893 ? The trial court was of the opinion that adverse possession began to run from the latter date, and so instructed the jury. The rule seems to be well settled that, where a mortgagor conveys mortgaged real estate, his grantee takes subject to the mortgage and the statute of limitations does not begin to run against the mortgage until it is due and can be foreclosed. 2 Jones, Mortgages (1st ed.), § 1211; Boswell, Limitations, § 312; 1 Cyc. 1069, par. 42; 1 Am. & Eng. Ency. Law (2d ed.), 815.

The reason for this rule is apparent, because the mortgagee

is not entitled to possession of the mortgaged premises until the mortgage has been foreclosed. He cannot foreclose until the debt becomes due. In the meantime the mortgagor or his grantees are entitled to the possession of the mortgaged premises. The mortgagee is therefore helpless to enforce his rights against a possessor prior to the maturity of the debt secured by the mortgage. The grantee of the mortgagor, with either actual or constructive notice of the mortgage, is conclusively presumed to stand in the place of the mortgagor, and cannot therefore be said to hold adversely to the mortgagee. If this rule controls the case in hand, then there can be no doubt that the instruction given by the trial court was correct. But in this state a mortgage conveys no title to the real estate. The property mortgaged is held merely as security for the payment of the debt (*Hitchcock v. Nixon,* 16 Wash. 281, 47 Pac. 412; *Dane v. Daniel,* 23 Wash. 379, 63 Pac. 268; *Fischer v. Woodruff,* 25 Wash. 67, 64 Pac. 923, 87 Am. St. 742); and ceases to be a lien upon the real estate after six years from its maturity, when no payments have been made and no action to foreclose the lien had been commenced within that time. Bal. Code, § 4978; *Damon v. Leque,* 17 Wash. 573, 50 Pac. 485; *Dane v. Daniel, supra; Krutz v. Gardner,* 25 Wash. 396, 35 Pac. 771; *George v. Butler,* 26 Wash. 456, 67 Pac. 263, 57 L. R. A. 396; *Hanna v. Kasson,* 26 Wash. 568, 67 Pac. 271; *De Voe v. Rundle,* 33 Wash. 604, 74 Pac. 836.

The mortgagee is not entitled to possession and cannot maintain ejectment under his mortgage. Bal. Code, § 5516. One in possession of real estate, under claim of right from a mortgagor, is a necessary party to a foreclosure of the mortgage, and a decree of foreclosure is not effective as to him. Bal. Code, § 4833; 9 Ency. Plead. & Prac., 305; 2 Jones, Mortgages (6th ed.), § 1406; *Denny v. Cole,* 22 Wash. 372, 61 Pac. 38, 79 Am. St. 940. The rule also is that, " a title acquired by adverse possession is a title in fee simple, and is as perfect a title as one by deed from the original owner or by

patent or grant from the government." 1 Cyc. 1135 B, and cases cited; 1 Am. & Eng. Ency. Law (2d ed.), 883, and cases cited.

Under the rule that the grantee of a mortgagor is in permissive possession of the mortgaged premises, and does not hold adversely as to the mortgagee, but stands in the same position as the mortgagor, the appellants in this case did not hold adversely to the mortgagee until the time when the mortgage became due and could be foreclosed. The possession of the appellants was the same as the possession of the mortgagor would have been had he retained possession, and had the mortgage not been foreclosed against him. The statute of limitations began to run against the mortgage lien when the mortgage became due. If the lien had not been foreclosed against any one until the expiration of six years after the note became due, no payments having been made thereon, the mortgage lien could not have been foreclosed at all. It would, in that event, have ceased to be a lien; assuming, of course, that the mortgagee or his assigns had remained out of possession of the mortgaged property. In that event, it could not be reasonably claimed that adverse possession did not run against the legal title, merely because a mortgage had existed upon the property for a term of years and had been permitted to expire by limitation. In short, as against the mortgagor, adverse possession began immediately at the time appellants took possession; as against the mortgagee holding a mortgage made and recorded at the time of taking possession, the statute of limitations did not begin to run until the mortgage became due.

When the mortgage was foreclosed against the mortgagor Wells and wife and Young and wife holding the record title, appellants were not made parties to the foreclosure. Their interest in the land was, therefore, not affected by the foreclosure, which was a nullity as to them. It was good as to all parties served or appearing in the action, and the foreclosure and sale vested all the interest of the parties, legal and equi-

table, in the purchaser at the sale, subject to redemption under the statute. If appellants in possession of the strip of land in question had been made parties to that foreclosure, their interests, acquired by purchase, by adverse possession, or in any other way, from the mortgagor or persons holding the legal title, would have become vested in the purchaser at the foreclosure sale. Whatever previous rights existed in favor of appellants would have been terminated at that time, and whether possession was taken or not by the purchaser at the foreclosure sale, adverse possession as to such purchaser could only run from the time of the sale. But since the appellants were not made parties to the foreclosure proceedings, such proceedings were not effective as to them, and they continued to hold possession and the right of possession the same as though the mortgage had not been foreclosed. Their interest was not foreclosed.

If instead of the foreclosure, the mortgagor and his grantees, Young and wife, in the year 1895, at the time of the foreclosure, had given a deed of the whole of lot 7 to the mortgagee, and the mortgagee and his grantors had permitted the appellants to remain in possession adversely for the period of ten years from the time they first acquired possession, it could not then be claimed that the possession of the appellants had been held adversely only from the time the mortgage became due; because, in that event, the title acquired by the deed would have been subject to all rights against Wells and wife and Young and wife, notwithstanding the mortgage lien. In order to extinguish these rights it would have been necessary to foreclose the lien of the mortgage against all subsequent holders of the legal title and actual possessors, notwithstanding the deed. Since the appellants were not made parties to this foreclosure, the purchaser at the foreclosure sale and their grantors held only a mortgage lien against the strip in the possession of respondents, and are therefore under the statute not entitled to the possession until the lien is

foreclosed.   They cannot maintain an action for possession until they have foreclosed the lien against the possessor.

At the time respondents dispossessed appellants, the ten-year period of adverse possession had fully run in favor of appellants against all persons having title, and the legal title was therefore perfect in appellants.   At that time, also, the statute of limitations had run against the right to foreclose the mortgage as against the appellants.   Their rights were therefore unaffected by the mortgage.   If Wells and wife had not given the mortgage, and appellants had been permitted to hold possession as they have done for thirteen years, neither Wells and wife nor their grantees could now claim that appellants had not acquired a perfect title to the land in question by adverse possession.   The fact that the mortgage lien has been permitted to expire by limitations as to the appellants, places them in the same position as though the mortgage had never been given.   It follows that the period of adverse possession in this case began to run from the time appellants took possession of the land in question, and that the lower court erred in instructing the jury that it began from the time the mortgage became due.

The judgment must therefore be reversed, and the cause remanded for further proceedings in accord with this opinion.

DUNBAR, FULLERTON, RUDKIN, CROW, and HADLEY, JJ., concur.