[No. 31320. Department Two. July 6, 1950.]

GERTRUDE F. BLOOMER, *Individually and as Administratrix, Appellant,* v. SOUTHWEST WASHINGTON PRODUCTION CREDIT ASSOCIATION *et al., Respondents.*[1]

[1]Reported in 220 P. (2d) 324.

*Fred M. Bond,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *James A. Stinson,* for respondents.

HILL, J.—We have here an attack on the jurisdiction of the superior court of the state of Washington for Pacific county to enter a decree of foreclosure covering certain Pacific county property. The facts are not in dispute.

On July 25, 1938, T. C. Bloomer and Gertrude F. Bloomer, his wife, sold and conveyed to A. G. Fender and his wife, the property involved in this litigation, being cranberry lands in Pacific county. (Certain personal property used in connection with the real property was also involved but will not hereinafter be referred to.) On that date, to secure the unpaid portion of the purchase price, the Fenders gave a mortgage to Gertrude F. Bloomer, covering the same property.

To finance the 1939 crop, the Fenders sought to borrow money from the Southwest Washington Production Credit Association, hereinafter called the credit association, which insisted, as a prerequisite to the loan to the Fenders, that the Bloomers consent that the purchase money mortgage be subordinated and made inferior to the crop financing mortgage of the credit association dated March 31, 1939; and the Bloomers did sign a subordination agreement, April 11, 1939.

On May 8, 1939, the situation was that the Fenders owned the real property referred to, subject to a mortgage to the credit association which had, by the subordination agreement, been made a first mortgage, and a second mortgage to Mrs. Bloomer. On that date, the Bloomers filed a petition in

the United States district court for a real property arrangement under an amendment to the national bankruptcy act known as the Chandler act, enacted June 22, 1938 (11 U.S.C.A., §§ 801-926). The lands involved herein were not listed in the petition or schedules filed by the Bloomers.

On April 3, 1940, the Fenders, being unable to make the payments on their mortgage, deeded all the property referred to herein to the Bloomers, thus making unnecessary a foreclosure of the second mortgage.

In January, 1942, the credit association commenced foreclosure proceedings on its mortgage, and the Fenders and the Bloomers were joined as defendants. The Fenders defaulted, but the Bloomers contested the foreclosure. A decree of foreclosure was entered July 8, 1943, and on August 28th all of the land covered by the mortgage was sold at foreclosure sale and bid in by the credit association. No redemption having been made from the foreclosure sale, and an appeal to this court by the Bloomers having been of no avail, a sheriff's deed issued February 9, 1945, conveying title to all of the land with which we are here concerned, to the credit association. Thereafter, the credit association sold substantial portions of the property to the individuals named as respondents herein.

In the meantime, the real property arrangement proceeding inaugurated by the Bloomers in the Federal court made no progress, at least so far as the record shows. In May, 1945, the Bloomers signed a stipulation for dismissal of the arrangement proceeding, and June 7, 1945, an order of dismissal was entered.

Thereafter, the Bloomers demanded of the credit association the return and possession of the property here in question, and an accounting. This being refused, they commenced this action against the credit association and the individuals to whom it had sold portions of the land, claiming that the foreclosure proceedings were void and that an accounting of the rents, issues and proceeds received from the use of the land by the credit association would show that the obligation to secure which the mortgage had been

given to the credit association had been fully extinguished.

Mr. Bloomer died during the course of this litigation, and his wife, who was appointed administratrix of his estate, now appears as appellant in her individual and representative capacities, although we find no order of substitution in the record.

The trial court held that the superior court for Pacific county was not deprived of jurisdiction to foreclose the credit association's mortgage by the real property arrangement proceeding in the Federal court, and that the decree in the mortgage foreclosure and the sale in conformity therewith were valid, and dismissed the action. This appeal followed.

The attempt by the Bloomers, after appearing in and contesting the foreclosure proceeding by the credit association and prosecuting an unsuccessful appeal to this court from the decree therein, to claim that their proceeding in the Federal court, in which the property here involved was never listed, deprived the Pacific county superior court of jurisdiction to foreclose the credit association's mortgage, has nothing about it to commend it to a court of equity. We will, however, not consider the respondents' defenses of *res judicata*, estoppel, and laches, but will deal squarely with the question of whether the superior court for Pacific county had jurisdiction to foreclose the credit association's mortgage.

The real property arrangement provided by 11 U.S.C.A., §§ 801-926, is

" . . . any plan which has for its primary purpose the alteration or modification of the rights of creditors or of any class of them, holding debts secured by real property or a chattel real of which the debtor is the legal or equitable owner." 11 U.S.C.A., § 806 (1).

The debtor who can avail himself of the provisions of the act is

" . . . a person, other than a corporation . . ., who could become a bankrupt under section 22 of this title [Title 11, Bankruptcy], who files a petition under this chapter [Chapter 12, Real Property Arrangements by Persons

Other Than Corporations] and who is the legal or equitable owner of real property or a chattel real which is security for any debt. . . ." 11 U.S.C.A., § 806 (6).

■ When the Bloomers filed their petition for a real property arrangement, there were foreclosures pending on their hotel property in Raymond and their home property in Seaview, and it was their desire to stay those proceedings. They then had, as heretofore indicated, no title to the property involved in this case, although Mrs. Bloomer held a mortgage on it which was subordinate to the mortgage of the credit association, and she stood in the position of a second mortgagee. There never was a debtor-creditor relationship between the Bloomers and the credit association, and the credit association was not and could not properly have been listed as a creditor in the real property arrangement proceeding.

The Bloomers commenced this action relying primarily upon the definition of "debts" and upon two other sections of the statute relative to real property arrangements:

Debts include all claims, and claims include " . . . all claims of whatever character, *against a debtor or his property.* . . ." (Italics ours.)  11 U.S.C.A., § 806 (2).

"Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, *have exclusive jurisdiction of the debtor and his property,* wherever located." (Italics ours.) 11 U.S.C.A., § 811.

"Unless and until otherwise ordered by the court, upon hearing and after notice to the debtor and all other parties in interest, the filing of a petition under this chapter *shall operate as a stay of any act or proceeding to enforce any lien upon the real property or chattel real of a debtor.*" (Italics ours.) 11 U.S.C.A., § 828.

Almost the entire opinion of Judge Woolley of the third circuit court of appeals in the case of *Brunn v. Wichser,* 75 F. (2d) 25, is apropos, but we will state only the holding in that case instead of quoting at length from the opinion.

In that case, the court construed substantially similar provisions in the bankruptcy act as it then existed (1934), re-

lating to extension agreements. 11 U.S.C.A., § 202. (See particularly subds. (a), where debts were defined as including "all claims of whatever character *against the debtor or his property*," and (m), where it was provided that "The filing of a debtor's petition . . . shall *subject the debtor and his property, wherever located, to the exclusive jurisdiction of the court. . . .*" (Italics ours.)) It was there held that there is no debtor-creditor relationship between a first mortgagee and a second mortgagee who has availed himself of the provisions of the act designed to secure an extension of the time for the payment of debts; and it was further held that, in states such as Pennsylvania, where the mortgagor retains title to mortgaged property, the land covered by the mortgage is not the property of the second mortgagee.

It hardly needs citation of authority to establish that in this state, as in Pennsylvania, the real property covered by a mortgage is not the property of the mortgagee. *Thorneley v. Andrews,* 40 Wash. 580, 82 Pac. 899; *Jump v. North British & Mercantile Ins. Co.,* 44 Wash. 596, 87 Pac. 928; *Gerber v. Heath,* 92 Wash. 519, 159 Pac. 691; *Hatupin v. Smith,* 21 Wn. (2d) 132, 150 P. (2d) 675. We therefore hold that, at the time the Bloomers filed their petition for a real estate arrangement, the land in question was not their property, and they were not debtors of the credit association.

Appellant contends, however, that the land involved here did become their property prior to the commencement of the foreclosure proceedings, to wit, on April 3, 1940, the date of the deed by the Fenders to them, and that it thereupon became subject to the exclusive jurisdiction of the Federal court and the foreclosure proceeding commenced in 1942 was automatically stayed by 11 U.S.C.A., § 828, *supra.*

With certain exceptions not here material, property acquired by a bankrupt after filing a petition for bankruptcy is not subject to the jurisdiction of the bankruptcy court, and is not an asset of the bankruptcy estate. *Everett v. Judson,* 228 U. S. 474, 57 L. Ed. 927, 33 S. Ct. 568; 4 Collier on Bankruptcy (14th ed.) 979, § 70.09. Appellant concedes this

general rule as to bankruptcy, but contends that it has no application to real property arrangements. However, she cites no authority to sustain her position, and we are persuaded by the reasoning in *Brunn v. Wichser, supra* (where the Federal court refused to enjoin the foreclosure of a first mortgage although the second mortgagee had acquired title to a portion of the real property subject to the first mortgage after an extension of the time for payment had been granted him (the second mortgagee) under 11 U.S.C.A., § 202), that the rights of the parties must be determined according to their status on the date that the petition for the real property arrangement was filed. And on that date, as we have seen, the land with which we are here concerned was not the property of the Bloomers.

The real property arrangement proceeding did not stay the credit association's foreclosure proceeding, and the judgment of the trial court upholding the validity of that foreclosure proceeding is affirmed.

SIMPSON, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.