**In the Matter of William S. ELLIS, Jr., Debtor.**

**Bankruptcy No. 72–391.**

United States District Court, D. Hawaii.

Nov. 30, 1989.

---

William S. Ellis, Honolulu, Hawaii, pro se.

## DECISION ON APPLICATION FOR ORDER REMOVING APPLICANTS' REAL PROPERTY FROM INVENTORY AND SCHEDULES AND OTHER RELIEF

PENCE, District Judge.

### I. INTRODUCTION

This matter comes before this court on an application made by John T. Goss and

Marilyn Mueller Goss, Trustees under the Revocable Trust of Jay K. Goss, Melanie G. Majors, Jeb S. Goss and James B. Goss (hereinafter "applicants") for an order removing or expunging their real property from the schedules and inventories of the property of the debtor, William S. Ellis, Jr.

The debtor filed his petition under Chapter XII of the Bankruptcy Act on December 29, 1972. At the time of the filing, no reference was made on any of the schedules filed by the debtor to the property of the applicants. However, in 1973 and 1974 Ellis purportedly acquired an interest in the applicants' property when members of Olinda Associates assigned their interests in the property to the debtor. Ellis began including the property in the schedules filed relative to his estate from 1979 on.

The applicants maintain that inclusion of the property in schedules filed relative to the Ellis bankruptcy is improper on two separate grounds. First, the applicants claim that the sale whereby members of Olinda Associates acquired the property was cancelled by a decision of the First Circuit Court of the State of Hawaii on September 21, 1967 and the property was retitled in the names of the original sellers, John T. Goss and Marilyn Mueller Goss. Therefore, the applicants claim that members of Olinda Associates had no interest which they could transfer to the debtor in either 1973 or 1974. Secondly, the applicants assert that even if members of Olinda Associates had proper title to the property, any transfer of an interest in the property to the debtor took place at a time subsequent to the filing of the debtor's bankruptcy petition. As a result, such an interest may not be a part of the debtor's estate under federal bankruptcy law.

Both the trustee and the debtor himself have filed papers in response to this application. These papers include affidavits from both the trustee and the debtor asserting that this court is disqualified from hearing this matter due to a "disqualifying personal bias and prejudice" against both the trustee and the debtor. Secondly, the trustee and the debtor argue that the action the applicants seek is only available in an adversary proceeding brought in connection with the original bankruptcy. Finally, the debtor argues that the judgment of the Circuit Court rescinding the earlier sale of the property was ineffectual since the property had already been scheduled in a prior bankruptcy proceeding and was thus under the automatic stay which issued in connection with that bankruptcy.

## II. FACTUAL BACKGROUND

The application for removal is made with respect to the following property:

a portion of grant 7926 to Joseph Graca situated at Waiohuli–Kula, Maui, containing an area of 21.33 acres more or less, together with an easement appurtenant to road and utility purposes, the same being identified on the tax maps for the County of Maui by TMK 2-2-5: Parcel 77.

Prior to the activity which is relevant to this application, the property was titled in the names of John T. Goss and Marilyn Mueller Goss. The property is now purportedly part of the res of a trust dated September 9, 1980, under which the applicants are trustees. It is in that capacity that the applicants have brought the present petition for action by this court.

On February 1, 1961, the property was sold on Agreement of Sale by John T. Goss and Marilyn Mueller Goss, husband and wife, to Masaru Sumida, Charley T. Shiraishi, Stanley Unten and Florence A. Ellis (wife of the debtor), then doing business as Olinda Associates. On September 21, 1967, this Agreement of Sale was cancelled by a judgment entered in Civil No. 11563, First Circuit Court, State of Hawaii.

On January 16, 1967 a petition was filed in BK No. 67–17, *Sumida, et. al.*, in which the property was scheduled. This bankruptcy petition was subsequently declared void on its face by Judge Tavares in proceedings held in this court. *See Ellis v. J–R–M Corporation*, 324 F.Supp. 768 (D.Hawaii 1971); *Ellis v. Yumen*, 324 F.Supp. 1314 (D.Hawaii 1971).

On December 29, 1972, William S. Ellis, Jr. filed his Petition for a Proposed Real Property Arrangment under Chapter XII

of the Bankruptcy Act. Neither the debtor's petition, nor any of the schedules or exhibits filed in connection with it included or contained reference to the property.

On October 5, 1973, Florence A. Ellis purported to assign her interest in the aforementioned Agreement of Sale to the debtor. On December 4, 1974, Masaru Sumida, Charley T. Shiraishi, Stanley Unten and William S. Ellis, Jr. as general partners in Olinda Associates, purported to convey the property by warranty deed to the debtor.

On July 12, 1979, the debtor filed Further Amendments to Schedule B in BK No. 72–391, under which he added the property to the other property of the estate in that bankruptcy. On January 22, 1981, the debtor listed the property in a Preliminary Inventory of Real Estate and on April 22, 1981 he listed it in an Amended Inventory of Real Estate, both filed in connection with his bankruptcy proceedings.

The applicants filed the present application on October 23, 1989.

## III.   RECUSAL

The court will first deal with the affidavits filed by the trustee and the debtor maintaining that this court must recuse itself from hearing either the present application, or any other matters relating to this case. The trustee has claimed that the court has a "disqualifying personal bias and prejudice" against both her and the debtor. She maintains that this is evidenced by this court's characterization of the debtor in a derogatory manner "on occasions too numerous to canvas by exhibits." Despite this assertion, the trustee has seen fit to attach a number of exhibits to her application, which she maintains outline a "well-planned and organized campaign on [this court's] part ... to wreak havoc upon the ELLIS bankruptcy at every opportunity." She is further of the opinion that the court has "already outlined in [its] own mind how [it is] going to ravage the ELLIS estate" by use of the present application.

With the exception of the order appointing Mrs. Ryan trustee in this proceeding and a letter from opposing counsel rejecting the trustee's request that this matter not be heard by this court, all of the exhibits offered by the trustee are papers filed in other cases which were before this court. One is an affidavit requesting recusal, filed by the trustee's husband, Joseph A. Ryan in *Joseph A. Ryan v. Mary Lou McKenna*, CV. No. 88–936. The rest are papers filed in connection with BK No. 84–371, *In re Lillian Hagopian Corey.*

The debtor has filed his own affidavit maintaining that the court must recuse itself from consideration of this application. In his affidavit, the debtor has given a brief history of my legal practice and some of the political contacts which I had prior to my appointment to the bench. He has also outlined a thumbnail political history of Hawaii from the period of 1955 to the present, detailing the interaction of various politicians with the debtor and with each other, and asserting the existence of an overarching conspiracy on the part of these figures to effect a "concensus political retribution" of the debtor. While this may be a slightly interesting narrative to read, it does not concern itself with matters which bear on the recusal of this court except insofar as the debtor makes claims that this court has "arranged an unwarranted intrusion" into this proceeding in order to continue actions which have "wrought havoc which has persisted to this day ... [and which] has been ... devastating to [the debtor's] life and fortune."

■ The decision to recuse is one which is committed to the court's discretion and will not be overturned absent an abuse of that discretion. *United States v. Branco*, 798 F.2d 1302, 1304 (9th Cir.1986). But in exercising that discretion, a judge is not left without guidance; in fact, the law on recusal is quite straightforward. The Ninth Circuit in *U.S. v. Monaco*, 852 F.2d 1143, 1146–47 (9th Cir.1988) set out the standard which is to be followed within this circuit by a judge presented with a motion for recusal, and it is this standard which the court has followed in reaching its conclusion.

28 U.S.C. § 455(a) (1982) states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." If a party feels that the judge in a particular case is basing his or her decisions on matters or opinions which have not been presented in the judicial proceedings which have taken place, has prejudged the matter, or has a personal bias or prejudice which would preclude them from hearing the matter, then the party is to file an affidavit to that effect. However, "[t]he alleged prejudice must result from an extra-judicial source ..." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986); "[p]arties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity." *United States v. Frias–Ramirez*, 670 F.2d 849, 853 n. 6 (9th Cir.) (citations omitted), *cert. denied*, 459 U.S. 842, 103 S.Ct. 94, 74 L.Ed.2d 86 (1982). "Under 28 U.S.C. § 455(a) a judge should disqualify himself if a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *In re Williams*, 99 B.R. 70, 71 (Bkrtcy, D.N.M.1989). But "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 585, 86 S.Ct. 1698, 1711, 16 L.Ed.2d 778 (1966).

If a party fails to point to any extra-judicial conduct on the part of the judge which would justify its claim of personal prejudice or bias, then a court has no choice but to hear a matter. This requirement is imposed for the obvious reason that a party should not be able to move for recusal as soon as one decision by a judge has gone against them.[1] In like manner, a judge may not recuse himself simply because he does not want to hear a matter. Even where a judge would like to have grounds for recusal, for example due to calendar constraints or the difficulty of the subject matter of the dispute, in the absence of extra-judicial activity which would point to a bias or prejudice against a party a judge is duty-bound to sit on a case.

This is not to say that judges may not develop opinions regarding the parties or counsel who appear before them. This often occurs. But if such opinions are developed in conjunction with judicial proceedings or are the outgrowth of activity which occurs before the judge as he is trying a case or conducting chambers conferences, such opinions will not provide grounds for recusal, nor may they be used by a judge to justify a self-imposed recusal. *See, e.g., United States v. Grinnell Corp., supra*, at 583, 86 S.Ct. at 1710 (1966); *United States v. Partin*, 552 F.2d 621, 636–39 (5th Cir.1977), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); *United States v. Tropiano*, 418 F.2d 1069, 1077 (2d Cir.1969), *cert. denied*, 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970); *Lyons v. United States*, 325 F.2d 370, 376 (9th Cir.1963), *cert. denied*, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964).

This court has reviewed the affidavits provided by both the trustee and the debtor to ascertain whether any of the grounds they give for recusal fall within those sanctioned by the Ninth Circuit in its various decisions or the other cases cited herein. Despite the plethora of exhibits provided by the trustee, nowhere does she point to any statement or action by this court which took place in a nonjudicial proceeding. As to the debtor, this court will take notice of the fact that it is the personal opinion of the debtor that this court has established a well thought-out plan to wreak havoc upon him. But the existence of such an opinion, standing alone and not

---

**1.** An example of this point is provided in the present case in the affadavit of the trustee. She points out that in another case which was heard by this court, BK No. 84–00371 (Chapter 11), *In re Lillian Hagopian Corey*, four motions for recusal and four appeals of this court's decisions to the Ninth Circuit have been brought. However, neither the fact that this court has rendered decisions adverse to the parties in another proceeding nor the fact that those decisions have been appealed provides a basis for recusal.

grounded in evidence, is insufficient to justify this court's recusal. The only statement which the debtor provides which occurred within a non-judicial proceedings is his own affirmation that "[i]t is reasonable to presume that his [i.e. this court's] appointment was endorsed by the Young Democrats who had ascended to power as members of the Concensus government of Hawaii, one of who was his own law partner." Absent a less tenuous connection to any real evidence of bias, there exist insufficient grounds for this court to recuse itself under the standards provided by the Ninth Circuit and the other cases cited. Consequently, the request of the trustee and the debtor that this court recuse itself from hearing this matter must be, and are denied.

## IV. INCLUSION OF THE PROPERTY IN THE DEBTOR'S ESTATE

The applicants have made two separate arguments as to why this court should order the removal of the property from the schedules and inventories of the estate of the debtor. The first is that the February 1, 1967 sale of the property was an executory contract which was cancelled when the judgment of the First Circuit Court in the case of *Marilyn M. Goss, et al. v. Olinda Associates* was entered on September 21, 1967. The second argument raised by the applicants concerns the general application of federal bankruptcy law. The applicants maintain that property acquired by a debtor following the original filing of a petition in bankruptcy may not be part of the estate of the debtor which receives protection under the automatic stay. Since any interest the debtor might possibly have in the property was acquired subsequent to the original filing of the debtor's petition under Chapter XII, the applicants maintain that the property may not be claimed as part of the debtor's estate and thus must be removed from the schedules and inventories filed in connection with that estate. The court will examine each of these arguments in turn.

The debtor's petition was filed in 1972 under the Bankruptcy Act which was then in effect. The law at that time was that questions of the validity or construction of a real estate contract were questions of real property law and thus dependent upon state law as interpreted by the state courts. *See Mangus v. Miller*, 317 U.S. 178, 183–86, 63 S.Ct. 182, 184–86, 87 L.Ed. 169 (1942); *Smith v. Hill*, 317 F.2d 539, 543 (9th Cir.1963); *In re Terrace Lawn Memorial Gardens*, 256 F.2d 398, 401 (9th Cir.1958); *cf., In re FCX, Inc.*, 853 F.2d 1149, 1153 (4th Cir.1988) (debtor's interest in property at the time of the filing is determined by non-bankruptcy law). Therefore, this court must turn to the law of the state of Hawaii to determine whether the applicants' claim to the property is a valid one.

Under Hawaii law, "[a]n agreement of sale ... is an executory contract which binds the vendor to sell and the vendee to buy the realty which constitutes the subject matter of the transaction." *Jenkins v. Wise*, 58 Haw. 592, 596, 574 P.2d 1337 (1978); *State Savings & Loan v. Kauaian Development*, 50 Haw. 540, 552–53, 445 P.2d 109 (1968). However, a court in equity has power to cancel such a contract upon breach by one of the parties. *Jenkins v. Wise*, 58 Haw. 592, 597, 574 P.2d 1337 (1978) (citations omitted), or to fashion such other relief as it deems fit under the situation. *Fleming v. Napili Kai, Ltd.*, 50 Haw. 66, 70, 430 P.2d 316 (1967), *reh. denied*, 50 Haw. 83, 431 P.2d 299 (1967).

This is apparently what happened in the instant case. Marilyn M. Goss, one of the original grantors of the property, brought suit against Olinda Associates in the First Circuit Court of the State of Hawaii. The Circuit Court entered a judgment in that case declaring the February 1, 1961 Agreement of Sale to be null and void. Thus, when this agreement was cancelled the property reverted back to its original grantors, John T. Goss and Marilyn Mueller Goss.

The debtor has shown no other grant of the property from these grantors to either himself or any other person who subsequently transferred the property to him. As a result, this court finds that the

debtor possessed no interest in the property at the time of the filing of his petition which could have been included in the estate created by that filing.

However, the facts indicate that the debtor began including the property in schedules and inventories filed in relation to his estate at a time subsequent to his original filing. This moves us to consideration of the second of the applicants' arguments, namely that federal bankruptcy law precludes the debtor from including the property as part of his estate since any interest the debtor might have acquired in the property was transferred to him after the original filing of his petition. The applicants maintain that such a transfer would be a post-petition acquisition of a property interest and consequently unaffected by the original stay.

The applicants point to *Bloomer v. Southwest Washington Production Credit Assn.*, 36 Wash.2d 752, 220 P.2d 324 (1950) in support of their position. In that case, as here, a debtor who had filed a Chapter XII petition sought to include an interest in property acquired subsequent to the filing of his petition. The court refused to allow it, holding that "property acquired by a bankrupt after filing a petition for bankruptcy is not subject to the jurisdiction of the bankruptcy court, and is not an asset of the bankruptcy estate." 220 P.2d at 327.

This is the only authority which the court has come across dealing explicitly with the issue under a Chapter XII petition.[2] However, there is ample authority for this proposition under other portions of the Bankruptcy Act. *See Segal v. Rochelle*, 382 U.S. 375, 377, 86 S.Ct. 511, 513, 15 L.Ed.2d 428 (1966) (under § 70(a) of the Bankruptcy Act, the trustee is vested with title to the bankrupt's property on the date of the filing of the petition and property subsequently acquired is property of the bankrupt personally and not property of the estate); *Myers v. Matley*, 318 U.S. 622, 625,

63 S.Ct. 780, 782, 87 L.Ed. 1043 (1943) (the pre–1938 rule which vested the trustee with title to the bankrupt's property as it was held at the time of the filing of the petition was carried forward into the 1938 Bankruptcy Act); *Everett v. Judson*, 228 U.S. 474, 479, 33 S.Ct. 568, 569, 57 L.Ed. 927 (1913) (property which vests in the trustee at the time of the adjudication is only that property which the bankrupt held at the time of the filing of the petition); *Lockhart v. Garden City Bank & Trust Co.*, 116 F.2d 658, 660 (1940) ("it is settled in ordinary bankruptcy ... that property in the actual or constructive possession of the bankrupt when the petition is filed vests in the trustee and becomes subject to the exclusive jurisdiction of the bankruptcy court"); *Mason v. Wylde*, 46 A.B.R. 75, 87 (1941) (same). Courts have also followed this position in cases brought under the Bankruptcy Code and Rules. *In re Girard*, 98 B.R. 685, 687 (Bkrtcy.D.Vt.1989) (Ch. 7) (property received by the debtor post-petition is not part of the estate unless it falls within the exceptions of § 541(a)(5)); *In re FCX, Inc.*, 853 F.2d 1149, 1152 (4th Cir.1988) (Ch. 11) (estate succeeds to only those interests the debtor had in property prior to the commencement of the bankruptcy); *In re Thomas*, 93 B.R. 475 (N.D. Tx.1988) (Ch. 7) (federal bankruptcy law defines property of a bankruptcy estate as only that property which exists at the time the bankruptcy is filed); *In re Jenkins Landscaping and Excavating, Inc.*, 93 B.R. 84, 88 (D.W.Va.1988) (Ch. 7) (assets generated by the debtor after filing of the petition are not property of the estate); *In re Kragness*, 63 B.R. 459, 464 (Bkrtcy.D. Or.1986) (Ch. 7) (estate only includes assets that the debtor acquires or becomes entitled to acquire by bequest, devise or inheritance within 120 days after filing the petition); *Matter of Brannan*, 40 B.R. 20, 25 (Bkrtcy.N.D.Ga.1984) (any property received post-petition is not part of the bank-

---

**2.** The 2d Circuit, in a case in which this issue was noted tangentially stated that there was no authority for the applicability of the stay in a Chapter XII proceeding as to property acquired subsequent to the filing of the petition and that *Bloomer v. Southwest Production Credit Assn.,*

*supra,* and 9 *Collier on Bankruptcy,* ¶ 3.06, at 805 n. 4 (14th ed. 1978) had decided that the stay was inapplicable. *See 400 North Midler Ave. Corp. v. DEPO,* 793 F.2d 48, 50 n. 1 (2d Cir.1986).

ruptcy estate unless it falls within exceptions of § 541(a)(5)); *In re Dvoroznak*, 38 B.R. 178, 181 (Bkrtcy.E.D.N.Y.1984) (Ch. 11) (property acquired by the debtor subsequent to the filing of a petition in bankruptcy does not become part of the bankruptcy estate unless inclusion is specifically required by statute); *see also*, 4 Collier on Bankruptcy ¶ 541.05 at p. 541–23 (15th Ed. 1983).

It is thus clearly apparent that even if the debtor had acquired a legitimate interest in the property by transfer from any of the members of Olinda Associates that such an interest could not be a part of his estate in bankruptcy. Since the debtor filed his petition in late 1972 and any interest he may have acquired was not transferred until 1973 or 1974, such an interest would be after-acquired property and as such not includable as part of his estate. Consequently any interest that the debtor might claim in the property would be personal to him and should not be included in any schedule or inventory filed in connection with BK No. 72–391.

### V. THE TRUSTEE'S AND DEBTOR'S OBJECTIONS

Both the trustee and the debtor have raised a number of objections to the maintenance of the petition brought by the applicants. They claim that there is no authority in Chapter XII for the removal of real property from an inventory or schedules by court order and that the action sought must be pursued by means of an adversary proceeding. Additionally, the debtor claims that the entry of the Circuit Court judgment occurred during the pendency of BK No. 67–17, *Sumida et al.*, and that since the property was scheduled as part of the estate of that bankruptcy it was protected under the automatic stay.

All of these objections are without merit. Bankruptcy Rule 110 states that "... [t]he court may, on application or motion of any party in interest or on its own initiative, order any voluntary petition, schedule, or statement of affairs to be amended." This rule was made applicable to Chapter XII

proceedings by Rule 12–12 which states that "Bankruptcy Rules 109 and 110 apply in Chapter XII cases to petition, schedules, statements of affairs, statements of excutory contracts and amendments thereto." Thus, Rule 110 gives this court authority to grant the applicants petition and order the schedules and inventories amended in BK No. 72–391. This precludes the necessity of the application being brought as part of an adversary proceeding.

As to the contention that the property was scheduled as part of the estate in BK No. 67–17, *Sumida, et al.*, this objection is also lacking in foundation. Judge Tavaris found in two separate cases filed in this court that BK No. 67–17 was void on its face and any stay issued under that filing to be of no effect. *Ellis v. J–R–M Corporation*, 324 F.Supp. 768, 774 (D.Hawaii 1971); *Ellis v. Yumen*, 324 F.Supp. 1314, 1320 (D.Hawaii 1971).[3] Therefore it is impossible for any filing, schedule or other document filed in relation with this bankruptcy to have had any effect whatsoever on the Circuit Court's judgment.

### VI. CONCLUSION

For the reasons outlined above the Goss application is GRANTED and an order to that effect will issue requiring the removal of any reference to the property in any schedules or inventory of the property of the debtor's estate.

IT IS SO ORDERED.

---

**3.** The plaintiff "Ellis" in each of these cases is the same William S. Ellis, Jr., the debtor here.