## SIMON et al. v. CHAMBLESS et al.

### No. 8147.

Circuit Court of Appeals, Fifth Circuit.

Dec. 1, 1936.

Frank M. Young, of Birmingham, Ala., and Gustavus A. Rogers, of New York City, for appellants.

A. Leo Oberdorfer and Augustus Benners, both of Birmingham, Ala., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants throughout all of the many proceedings of which this is the climax, have been known as the Payne Committee. The order appealed from was entered in a reorganization proceeding under section 77B, Bankr.Act, as amended 11 U.S.C.A. § 207, involving the parent corporation, the Trustees System Service Corporation, Inc., and some of its wholly owned corporate subsidiaries. It found appellants and those they represent, to be creditors, to wit, noteholders, of the parent corporation, and as such allowed their claims against that corporation. It denied their claim that they were creditors of its Pennsylvania subsidiaries and entitled as such creditors to direct claims upon the funds of those subsidiaries which had been gathered into the reorganization proceedings.

The claim as put forward by appellants below and here is that as noteholders of the parent corporation they had, by instituting and causing to be instituted court proceedings in Pennsylvania, acquired as to the Pennsylvania subsidiaries and the funds gathered in those proceedings, the standing not only of direct creditors of those corporations, but of creditors with an equitable lien giving them priority as to those funds over other creditors of the parent corporation.

The proceedings on which they rely were the filing by them in the Eastern District of Pennsylvania of six bills, praying the appointment of receivers. One brought against the parent company then in primary receivership in Illinois, sought the appointment of ancillary receivers. The other five, each brought against a Pennsylvania corporate subsidiary, sought a receivership for that subsidiary on the ground that it was not only wholly owned, but dominated and directed, by the parent, and that each of the subsidiaries was but an agency, instrumentality, or means through which the parent operated. The same persons were appointed ancillary receivers in the first suit and primary receivers in all of the others.

The Trustees System Company of Pennsylvania, one of the five corporations for which a receiver had been appointed, was also doing business in the Western District of Pennsylvania under its own name and through two other corporations, its immediate subsidiaries, the Trustees System Company of Pittsburgh, and the Trusco Company of Pittsburgh. The Eastern District receivers therefore, in their capacity as ancillary receivers of the parent corporation, immediately petitioned the District Court for the Western District of Pennsylvania for and were granted, the appointment there of ancillary receivers for the Trustees System of Pennsylvania and primary receivers for the Pittsburgh companies.

There was no opposition to and no appeal from the ancillary appointment in the Eastern District, none from the appointments in the Western District, but each of the five Eastern District corporations appealed from the decree appointing a receiver as to it. These appeals resulted in an affirmance,[1] and the receivers both in the Eastern and Western Districts of Pennsylvania were proceeding with their administrations when a 77B proceeding was begun in the Northern District of Alabama. A trustee, Chambless, was appointed there, notice was given to the Pennsylvania receivers that the bankruptcy court had thereby acquired exclusive jurisdiction of each of the debtors and their properties wherever situated, and upon the application of Chambless, as separate trustee of each of the debtors, an order was made requiring the equity receivers to turn over all of their properties to him as such trustee. This order was made, however, subject to the stipulation authorized by the Alabama court that the Pennsylvania receivers should pay out of the funds before transmitting them, all properly allowed claims of creditors of the local companies. Pursuant to that stipulation, reference was made to a special master to hear and report on these claims.

Among others propounding claims before the master as creditors of the local Pennsylvania companies were appellants.

---

[1] Trustees System Co. v. Payne, and 4 other cases (C.C.A.) 65 F.(2d) 103, 107.

here. They, as a committee for noteholders of the Trustees System Service Corporation, the parent corporation, propounded claims aggregating $173,200 against the subsidiary corporations claiming priority of payment out of the funds of those subsidiaries "by reason of a lien on and/or sequestration, of and/or application of certain funds of those corporations now in the hands of the equity receivers." After their claims were heard before and rejected by the master, and exceptions were in the course of being filed, a further stipulation was entered into. This provided, in substance, that the funds remaining after paying all allowed claims of local creditors should be remitted to the Alabama court, and the claims of appellants, the Payne Committee, should be tried out there without prejudice to those claims from the adverse finding of the master. In addition to the claims of appellants for $173,200 on its gold notes there have been filed and allowed in the bankruptcy proceedings against the Trustees System Service Corporation claims of other holders of its direct gold note obligations, identical with those held by the Payne Committee in the sum of $1,872,817.96.

Two other circumstances, to which the District Judge attached considerable significance, should be mentioned. One is that at the time the Payne Committee filed its bills of complaint in Pennsylvania, petitions in bankruptcy against the parent corporation were pending in the Northern District of Illinois. The other is that that corporation has since been adjudicated bankrupt, and the Payne Committee has claimed on the gold notes in that proceeding, with the reservation, however, that this filing of its claim there is to be without prejudice to its asserted lien or priority on the Pennsylvania funds.

The equity receivers of the Pittsburgh companies paid over to Chambless, as trustee of the parent company, their sole stockholder, $105,376.61. The equity receivers in the Eastern District paid him in the same capacity, $45,651.14, these sums, together with the other assets of the Pennsylvania companies, all their direct creditors having been paid in full, to be held by him as trustee for the parent company, subject, of course, to the payment of creditors of that company, including those represented by appellants.

The District Judge upon these facts concluded that appellants were creditors of the Trustees System Service Corporation, the parent corporation, and entitled to prove their claims and share with its other creditors equally and ratably as such. He found that they were not in law or in equity creditors of any of the subsidiary corporations, and that neither in law nor in equity did they have any claim or right to the funds of those companies, except through and in right of their claims as creditors of the parent corporation. He therefore rejected as wholly without equity their claim to priority of payment out of those funds ahead of other creditors of the parent corporation holding like obligations with them. He thought it plain that this was so as a matter of independent judgment, because at the time the Payne Committee filed its equity proceedings in Pennsylvania, equity and bankruptcy proceedings were pending against it in Illinois, and because nothing had occurred or been done in the Pennsylvania suits to give appellants any direct claims against the subsidiaries, or to raise their standing above that of other creditors holding like obligations. He thought it would be greatly unjust to hold that a proceeding begun as ancillary to the main receivership in Illinois to preserve the assets for that company and those interested in it, had eventuated in putting the group of creditors who instituted the ancillary proceedings ahead of those who had filed their claims, either in the main receivership in Illinois, or in the bankruptcy pending there.

It is appellants' insistence that all questions as to their claims are now foreclosed by the judgments and orders entered in the Pennsylvania proceedings. They say that these have in effect adjudged them to be creditors of the local companies, and as such, entitled to their funds, and that because none of the other creditors of the parent company holding similar claims to theirs came into those proceedings, appellants' rights to the funds became exclusive.

We think it quite plain that these arguments of appellants proceed upon an entire misconception, not only of what ought to have been, but what was, the result of the equitable proceedings they instituted. Their invocation of the principle that equity aids the vigilant, and its application to the distribution of funds gathered up and preserved by creditors' bills under circumstances which make it equitable to award the funds to those by whose activities they have been gathered is, as a matter of prin-

ciple, unwarranted here. Only the clearest showing of a definite, final, and irrevocable order giving them the preferential status they claim could avail them here.

Urging upon us that they have made such showing, they point to the opinion and orders in the Pennsylvania appeals as such an adjudication.

They point in vain, however, for that opinion was rendered and those orders entered in regard to matters wholly collateral to and having slight bearing on the claim now made, that appellants' status as creditors of the Pennsylvania subsidiaries was finally adjudicated. In addition, the opinion they rely on does not support, it negatives, appellants' claims. It precisely finds that appellants are creditors, not of the Pennsylvania subsidiaries, but of the parent corporation, and equitably entitled in that capacity, to rend the corporate veil and have receivers appointed for solvent corporations which are mere agencies of the insolvent parent. What was argued and disposed of in those cases was not the point labored here, of appellants' status to claim and appropriate the assets of those subsidiaries, to the exclusion of others. It was whether appellants here, plaintiffs there, holding notes and stock in the parent company, had an equitable interest in and right to institute proceedings to conserve the assets of the subsidiaries. That point was disposed of in favor of the plaintiffs and against the defendant corporations upon the holding that plaintiffs, as stockholders and noteholders of an insolvent parent corporation having secured an ancillary receivership for it, had an interest through that corporation in the subsidiaries, and an equitable right, because of their lack of independence of, their absolute dependence upon, the parent company, to have them, despite their individual solvency, put into conserving receiverships, in form primary, in effect ancillary.

The court, assuming for the discussion, that plaintiffs were creditors and stockholders of the dependent corporations, flatly held that this assumption would give no right to a receivership, for plaintiffs would then be merely stockholders and unsecured simple contract creditors of solvent corporations, saying "for an unsecured simple contract creditor has, in the absence of statute, no substantive right, legal or equitable, in or to the property of his corporate debtor." It therefore rejected the idea that plaintiffs' right to a receivership of these corporations could be rested upon a showing that they were its creditors. It then considered, on the allegations of the bills, the corporate status, set-up and operations of the parent company and its Pennsylvania subsidiaries. It held that for the purpose of the receivership sought, in form primary, in effect ancillary, the fiction of corporate entity might be disregarded, because in organization, control, and conduct the subsidiaries were mere instrumentalities and adjuncts of the parent.

Upon this finding, it concluded that the appointment of the receivers was proper, not because plaintiffs were creditors of the subsidiary corporations, but because, having averred in their bills for ancillary receivers of the parent corporation that they were holders of stock in and unsecured creditors of it, and having on these allegations secured the appointment of ancillary receivers for it, plaintiffs' character of "creditors of the parent corporation extends to the corporate departments which it embraces, and in view of the identity of the several corporations they had equitable rights sufficient to move for and obtain receivers for the subsidiaries, which though termed primary receivers are in principle because of unity, ancillary receivers."

It held in effect that the bills prayed for equitable relief against the subsidiaries in that they prayed for receivers for them in order that the entire matter might be co-ordinated in ancillary receiverships, and plaintiffs' right, the right to have the assets conserved and ultimately distributed to them either in the ancillary jurisdiction or in that of the main receivership, in the way prescribed by equity in relation to such receiverships be preserved to them. The fact that it was found that all of the proceedings were ancillary to the main proceeding in Illinois, and that this fact sustained all of the appointments, is further emphasized by their argument by analogy that if a main receivership be granted for a solvent corporation, its solvency does not prevent a court in another jurisdiction from appointing ancillary receivers for it in order to provide for the protection of local creditors as to local assets in the administration of the corporation's affairs.

Nothing, in short, can be spelled out of the opinion appellants rely on, or out of any of the proceedings taken in Pennsylvania, except that the receivership proceedings there were sustained as properly

brought because of the main receivership in Illinois and the ancillary character of the dependent proceedings. Nothing can be spelled out of them, except that the right of plaintiffs and other creditors of the parent company to participate in the funds gathered in the ancillary proceedings must be gotten at through and determined by, their relation to that company, and with due regard to the course the main receivership and insolvency proceedings against it should take.

This view of the matter supports and sustains the action of the Pennsylvania courts in taking hold of and conserving the assets of the subsidiaries. It supports and sustains the action of the receivers and the court in appropriating the Pennsylvania properties first to paying off and discharging the claims of creditors of the subsidiaries, and then turning over the funds and assets to the trustee of their sole stockholder, in the reorganization, to be applied and paid out in that proceeding equitably, and in the equal interests of all of the creditors of the parent company. This view supports the order appealed from.

That order was rightly entered. It is affirmed.