**William S. ELLIS, Jr., et al., Plaintiffs,**

v.

**Fusao YUMEN et ux., Defendants.**

**Civ. No. 2954.**

United States District Court,
D. Hawaii.

March 18, 1971.

Ralph E. Corey, Honolulu, Hawaii, for plaintiffs except Ellis.

William S. Ellis, Jr., pro se.

B. Martin Luna, Wailuku, Maui, Hawaii, for defendants.

## DECISION GRANTING DEFEND-ANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDG-MENT AND ORDER DISMISSING ACTION

TAVARES, District Judge.

### PART I

In this case hearings have been held and extended memoranda and oral arguments, with supporting affidavits, have been duly received, heard and considered on (1) the Court's Order to Show Cause why the cause should not be dismissed for failure to prosecute the same; (2) Defendant's Motion for Dismissal; and (3) Plaintiffs' Motion for Summary Judgment.

While, technically, at the outset, the Court might have been justified in holding on the bare record in this action prior to the issuance of the Order to Show Cause, that the cause should be dismissed for plaintiffs' failure to prosecute the same, this Court adopts the more liberal view that efforts by plaintiffs to have the same issues determined in the previously filed and related Chapter XII bankruptcy case (Bankruptcy No. 67–17) determined summarily in that matter, should be taken into consideration in this action, and therefore holds that the cause should not be dismissed solely for failure of plaintiffs to prosecute *this* action (Civil No. 2954). However, now that the Chapter XII matter has been dismissed upon grounds stated to be lack of jurisdiction, the plaintiffs have reverted to an attempt to secure a determination of the same issues in *this* action on the theory that this is an independent plenary action that should stand on its own feet.

This Court, in dismissing the Chapter XII matter, on grounds which, at the time, inadvertently overlooked the prime ground stated in Part II of this decision, was careful to hold that it was not deciding the merits of any other pending motions, applications or independent related actions raising issues which were the same as, or similar to, some of those sought to be raised in the Chapter XII matter, but which the Referee and Court had refused to decide in that matter because of the ruling that the Chapter XII proceeding had to be dismissed for lack of jurisdiction, once the creditors' meeting had been held and no plan was then pending, or proposed. The Court in dismissing the Chapter XII action, inadvertently, as stated in Part II, assumed that, up to the point of such dismissal, the action was valid and not subject to collateral attack. The Court made it clear, however, in its oral rulings— which were implemented later by the written order of dismissal and supple-

mentary rulings on motions to amend the findings or orders on motions to reconsider or for rehearing—that if dismissal of the Chapter XII proceeding had the effect per se of eliminating jurisdiction or capacity to proceed in any other matter in behalf of the debtor-petitioners, the Court was not purporting to rule contra, but would "let the chips fall where they may," so to speak.

■ Thus, assuming for the purpose of Part I of this decision that Bankruptcy No. 67–17 was a validly pending and effective Chapter XII proceeding, we come to the question of the capacity of the plaintiffs in this case, Civil No. 2954, to sue and maintain this action as debtors in possession in their alleged capacity as partners of an alleged partnership, Olinda Associates. As to this question, this Court finds and holds that, even if Bankruptcy No. 67–17 was a validly pending Chapter XII proceeding, the final dismissal of that proceeding did and does have the effect of eliminating the plaintiffs' capacity to sue as debtors in possession as partners or as a partnership. The situation, in this respect, is analogous, as this Court feels, to one where a person holding a cause of action, or against whom a cause of action exists, which does not survive his death, dies, eliminating that person as a party.

This leaves the further question to be decided, upon the assumption supra of validity of Bankruptcy No. 67–17, whether there remains in this action, Civil No. 2954, jurisdiction in this Court to proceed in favor of plaintiffs, in their capacity other than as alleged debtors in possession (or trustees in possession) of a partnership under the Chapter XII proceeding (Bankruptcy No. 67–17). Such jurisdiction could be maintained only upon one or both of the following grounds:

(1) The existence of diversity of citizenship, and/or (2) that this case in its present aspect presents a federal question.

Under the facts appearing of record or admitted in the record or in the argu-ments and memos of the parties, there clearly and conclusively is no *diversity* of citizenship under 28 U.S.C.A., Section 1331.

Thus we come to the final question: assuming the validity of Bankruptcy No. 67–17, is there a federal question so unequivocally and necessarily raised by the pleadings and such facts as to require this Court to retain jurisdiction and decide the merits of any issue so raised, under 28 U.S.C.A., Section 1331(a). This Court finds in the negative on this last question for reasons hereinafter stated.

It is argued in effect by plaintiffs that a federal question is involved because plaintiffs in paragraphs I to VII and Count I of their complaint (paragraphs IX to XI) raise an alleged issue that the cancellation and notice of cancellation of Agreement of Sale (Exhibits A and B attached to their complaint) between defendants (hereinafter sometimes called "the Yumens") and plaintiffs concerning the real property here in question and described in the complaint, are invalid because executed, and filed in the Registry of Conveyances of the State, at a time subsequent to the filing of the Chapter XII proceeding and while it was pending.

Copies of the Notice of Cancellation and Cancellation are attached to the complaint as Exhibits A and B, respectively. From these documents and other documents and statements in the record or in the memos or oral arguments, the following facts appear and are not controverted:

(a) The Agreement of Sale in question was executed and dated January 27, 1961, and recorded in the Registry of Conveyances of Hawaii (which unlike other jurisdictions has only one registry office for the registration of all conveyances in the State) in Liber 4045 at page 13, in 1961.

(b) The Agreement of Sale was executed by defendants Fusao Yumen and Kimiyo Yumen as sellers, and, as purchasers, by Masaru Sumida, Charley T. Shiraishi, Stanley Unten and Florence

A. Ellis apparently as individuals or tenants in common, as implied by Hawaii law (Kupau v. Waiahole Water Co., Ltd., 37 Haw. 234, 237; Awa v. Horner, 5 Haw. 543, H.R.S. § 509–1), and nowhere discloses that the purchasers purport to hold as partners or as trustees for any partnership.

(c) The agreed purchase price was $32,500, of which $8,500 was paid as a down payment in 1961, and the balance was to be paid as follows:

Annual payments of $4,000 until both the balance of the principal of $24,000 and the interest, accumulated at 5½% annually shall be fully paid.

(d) The defendants thereafter failed to make any more payments on account of the purchase price or interest, except $1,300 as interest for the first year in 1962, and $160 as partial interest in 1963, and were in default in a very high degree long prior to the cancellation of February 8 to 10, 1967.

(e) Under the Agreement of Sale, legal title was retained in the sellers, as this Court holds, contrary to the contentions of plaintiffs (which, however, is a question of Hawaii State law, rather than federal law), and the agreement also contained a provision under which, in the event of a default:

" * * * the sellers may declare this agreement null and void and retain all payments made hereunder by the Purchasers as liquidated damages and not as a penalty and as and for an agreed rental for the use and possession of said premises, and may take possession of said premises, including all buildings and improvements thereon, without service of notice or legal process and without any action by the Purchasers except such default as aforesaid, and may summarily eject the Purchasers or any person or persons claiming or holding by, through or under them without liability for damages therefor; * * *."

It is obvious that the Cancellation and Notice of Cancellation attached to the complaint as Exhibits A and B above mentioned, were an exercise of this expressly reserved power in the Agreement of Sale, which Agreement, by the way, included, as an attachment thereto, a form of mortgage to be executed if purchasers should pay, without default, a certain proportion of the purchase price, in which event they would be entitled to a deed from sellers with a mortgage back to sellers as mortgagees.

(f) The Yumens, because of the inability of the purchasers to make the payments in question, and without waiving the defaults, remained in possession of the land in question and were in sole and undisputed possession thereof long prior to, and at the time of, the cancellation.

(g) There is nothing in the record and other facts so disclosed to indicate conclusively that the Yumens understood and agreed that the purchasers were purchasing the real property in question as partnership property or in behalf of the partnership.

(h) From the record in Bankruptcy 67–17, the petition purporting to be under Chapter XII of the Bankruptcy Act was filed in this court on January 17, 1967. The Cancellation was executed by the Yumens on February 8, 1967, and the Notice of Cancellation was executed on February 9, 1967, and both documents were filed on February 10, 1967, as above mentioned, all of which acts were admittedly performed after the filing of the Chapter XII bankruptcy petition. See Exhibits A and B attached to the Complaint.

Under the foregoing circumstances, if in fact the purchasers' interest in the property was, on the date of the filing of the Chapter XII petition (January 17, 1967), owned by the partnership or by the individual purchasers in trust for the partnership, and if Bankruptcy No. 67–17 was a validly pending Chapter XII proceeding, it would appear that upon the filing of the Chapter XII petition the jurisdiction of the Bankruptcy Court would have attached and the statute (11 U.S.C.A. Section 828) staying all

proceedings and acts for foreclosure of liens, etc. (if the Agreement of Sale constituted a "lien" so far as the Yumens were concerned) would have become applicable. The question would then be presented whether, under Section 428 of the Bankruptcy Act, 11 U.S.C. § 828, the action of the Yumens in executing and filing the Cancellation and Notice of Cancellation were void and the attempted cancellation invalid, and thus a federal question could arguably be deemed to be presented.

On the other hand if, in fact, the purchasers were *not* holding as partners, or in trust for the partnership, but *merely as individual tenants in common*, which would be the literal and normal construction of the Agreement of Sale, and which presents a question of local State law, rather than federal law, then no interest of the partnership would have passed to the debtors in possession under the Chapter XII proceedings, and no jurisdiction of the Bankruptcy Court would have attached, and the statute would not have been applicable at all. Under such circumstances no federal question would be presented.

■ Since there exists this reasonable possibility, this Court believes that Count I of the Complaint does not necessarily present a federal question and the matter should be left to determination by the State court as to the exact interpretation of the facts and application of State law thereto, which, if decided in accordance with the latter possibility, would involve no federal question whatsoever. See Gardner v. Schaffer (8 Cir. 1941) 120 F.2d 840; Winsor v. United Air Lines (D.C.Del.1958) 159 F.Supp. 856; Cowan v. U. S. (S.D.N.Y.1959) 172 F.Supp. 291.

Coming now to Count II, and again assuming that Bankruptcy No. 67–17 was a validly pending Chapter XII proceeding, the same reasoning as set forth supra is applicable to the claim that the defendants were in contempt of the court.

■ As to the allegations of Count II to the effect that the defendants fraudulently, willfully and maliciously concealed the facts from this Court, and from the plaintiffs—this Court finds such allegation to be patently incorrect, to say the least, as hereinafter demonstrated.

Exhibit A, attached to and incorporated by reference in the Complaint, contains the statement that notice of the cancellation was served on the parties (meaning the purchasers) on February 9, 1967, and nowhere in the record or memoranda or arguments was this statement denied. When questioned by the Court as to whether this was true or not, Mr. Ellis, arguing for the plaintiffs, did not deny the same, but at least by inference admitted its truth by simply saying that *he personally* did not know about it until December 28, 1968. Besides such alleged lack of knowledge being incredible to this Court, the facts thus indicate that at least the other partners and hence the partnership as such, had notice, and therefore there was no fraud.

Thus there could be no fraud on the Court, and this count must fall, because the facts disclosed by the attachments to the Complaint, and disclosed in the oral argument, conclusively contradict the allegations of that count, even if the Court otherwise had jurisdiction thereof.

■ As to Count III, still assuming that Bankruptcy No. 67–17 was a validly pending Chapter XII proceeding, since the bankruptcy action was dismissed upon the motion of a number of other preferred creditors, in addition to the Yumens, it is not material whether or not the Yumens joined properly in the motion to dismiss the Chapter XII action. However, it is clear to this Court that, since the plaintiffs had listed in at least one schedule in the Chapter XII action the Yumen property as an alleged asset of the bankrupt partnership, the Yumens had sufficient standing, even if they had no claim as creditors of the

bankrupt, to join in the motion to dismiss, for the purpose of clearing their title. For both the foregoing reasons, therefore, there would be no cause of action in plaintiffs' favor for their joining in the motion in Bankruptcy 67–17, and there could be no damages to plaintiffs by reason thereof. Thus Count III fails to state a claim upon which relief can be granted, even if the Court otherwise had jurisdiction.

■ Now, as to Count IV, this Court cannot accept the contention of plaintiffs that the Agreement of Sale is in law a mortgage, pursuant to Section 196–1 RLH 1955 referring to the present HRS Section 506–1, and this Court knows of no authority to that effect in any of the courts of the Territory or State of Hawaii or their predecessors, and hence finds that this count does not state a claim upon which relief can be granted, even if this Court otherwise had jurisdiction.

### PART II

However, although the foregoing grounds under Part I of this decision might be sufficient for the results reached by the Court herein, this Court believes after considerable research, that there is another and much more conclusive reason why the same results should be reached.

Section 5 of the Bankruptcy Act, 11 U.S.C., Section 23, provides as to partnerships that a partnership, including a limited partnership containing one or more general partners, "may be adjudged a bankrupt either separately or jointly with one or more or all of its general partners."

The remainder of that long section contains provisions which clearly indicate that the *only* type of joinder contemplated by that section is a joinder of a *single* partnership with *one or more of the individual general partners who are members of that same partnership*. There is *no provision* in the Bankruptcy Act for the joinder of *two separate part-* *nerships* in a single voluntary bankruptcy proceeding.

Under the laws of Hawaii relating to partnerships and limited partnerships, as this Court sees it, every general or limited partnership, even between the same individuals, and therefore much more emphatically between individuals who are *not* identical in each partnership, is a *separate* entity. Therefore, to comply with the requirements of the Bankruptcy Act each partnership must file a separate voluntary petition in bankruptcy.

■ Chapter XII of the Bankruptcy Act relating to real property arrangements by persons other than corporations contains no provisions that this Court can find extending the scope of joinder provided for by Section 5 (11 U.S.C. Section 23). The definition of "debtor" in Section 406(6) of the Bankruptcy Act (11 U.S.C., Section 806(6)) does not extend the scope of Section .5 supra.

In Bankruptcy Number 67–17, we find that that action purported to constitute a joint petition by *two separate partnerships* or entities, *not having identical partners, not owning the identical properties described, and not having the same creditors.*

■ Such a conglomerate joinder of separate entities, properties and creditors, is apparently so unique that in spite of extensive research this Court has been unable to find a single instance where such joinder was sustained or even considered by any court.

A reading of Chapter XII as well as of said Section 5, clearly indicates, to this Court's mind, by the context and specific provisions as to procedure, joinder, rights and liabilities, etc., that no such conglomeration is possible or permissible or authorized by the Bankruptcy Act.

If this were a case where an original petition had been filed in behalf of *one* of the entities, which could then be considered the *prime* petitioner, and thereafter the second entity had been attempted to be illegally joined, it might

be contended that the entity first petitioning was the principal and validly petitioning entity and the prime one involved, and therefore the misjoinder might conceivably be disregarded as to the *second* entity, considering it as a minor or supplementary entity and, if no objection were made on the ground of misjoinder, there might even be an estoppel to question the validity of the proceedings as to the *first* entity. However, we are faced with the dilemma that the petition was filed *jointly and simultaneously* by *both* entities, so that it is *impossible* to determine if any one of the two entities is the principal one, and which one should be considered the prime or principal petitioning entity, so as to permit us to sluff off or disregard the other entity as improperly joined. The result, as this Court sees it, is that the petition is void on its face for an obviously inseparable misjoinder of both entities in a joint petition which is unauthorized by the statute, and the entire proceedings therefore are void on their face and can be collaterally attacked at any time. 50 C.J.S. Judgments § 617, p. 38.

It is true that on appeal, as happened in that bankruptcy matter, the Court of Appeals for the Ninth Circuit reversed and remanded the case for a creditors' hearing, and therefore it might be argued that, by implication, the Ninth Circuit Court recognized the joinder as valid. However, the obvious answer to that is that no one raised the question, it was not noticed by this Court or by the Court of Appeals, or by any of the parties, and was never considered or passed upon in any manner whatsoever. 50 C.J.S. Judgments § 714, p. 184, notes 24, 25.

Be that as it may, this Court can see no means by which the proceeding, invalid on its face, could have been validated by anything that the parties could have done. The proceeding, therefore, being void on its face, was not binding in any way upon the Yumens and therefore their action in proceeding with the cancellation of the Agreement

of Sale after the filing of the void bankruptcy action, was and is valid.

While this Court has found no decision directly in point, the following might be mentioned as by analogy sustaining the foregoing conclusion:

In re Fox West Coast Theatres, 88 F. 2d 212 (9th Cir. 1937) cert. den. Tally v. Fox Film Corp., 301 U.S. 710, 57 S.Ct. 944, 81 L.Ed. 1363, rehearing den. 302 U.S. 772, 58 S.Ct. 7, 82 L.Ed. 598, the court said:

"  *   *   * The final decrees referred to are attached to the affidavit of McNabb. There is no provision in the decrees holding that the Fox Film, the Wesco and the Fox West Coast Theatres, bankrupt, 'were one and the same.' The bankrupt and the Fox Film Corporation were represented by attorneys in the proceedings and Wesco was not a party to the actions. *There is no finding and no allegation in the complaint in these equity proceedings that these three corporations were one and the same. Even if there were such a finding and decree and stipulation, it would not be true. They were three separate corporations and in a bankruptcy proceeding it was necessary that they be treated as separate and distinct corporations.*

"*We have recently had occasion to consider the question as to whether or not the doctrine of alter ego can be applied to a bankruptcy proceeding. In Exchange Nat'l Bank v. Meikle, [9 Cir.] 61 F.(2d) 176, 179, we were presented with a novel situation wherein one individual owned all the stock of a number of very large and active corporations. In that case we said: 'It is not difficult to see Herrick [the sole stockholder] as the prime mover of all the various companies, but the rule is well established that a corporation exists as an entity, and that courts of law will not go beyond the fact of corporate existence in order to examine the real ownership of a corporation.' See, also, concerning the same group of corporations,*

Meikle v. Export, etc. (C.C.A.9) 67 F. 2d 301; Meikle v. Drain (C.C.A.9) 69 F.2d 290, 291. See also our decision in Ramish v. Laugharn (Re Chas. Behr) [9 Cir.] 86 F.2d 686, decided November 16, 1936.

"*The rule that corporate entity must be recognized in spite of stock ownership has recently been stated by a number of Circuit Courts of Appeals.*" (citing cases) \* \* \*

\* \* \* \* \* \*

"\* \* \* We cite this case [Simons et al. v. Chambless, as Trustee of Trusco Co. of Reading [5 Cir.] 86 F. 2d 569], to emphasize the fact that the corporate entities cannot be properly disregarded in an equity receivership in the administration of the funds of the several corporations. *This distinction is more necessary and vital in a bankruptcy court where, in the bankruptcy of the parent corporation, the stock it owns in its subsidiaries can be sold for the benefit of its creditors without interfering with the management and control of the subsidiaries during the process of liquidation.*" (88 F.2d at 227–228, pp. 227–229)

In the case of In Re Bowles, 15 F. Supp. 353; 157 A.L.R. 652 n., where a joint petition was filed by a husband and wife seeking to obtain the benefit of the acts of Congress relating to Bankruptcy and an order of joint adjudication had been entered, and a motion was thereafter filed by one of the creditors to vacate the order of adjudication and strike the petition from the files on the ground that the Court had no jurisdiction to entertain the petition of the parties, the motion was granted.

The Court said:

"No provision of the Bankruptcy Act authorizes the filing of a joint petition by two or more persons unless it be shown that the petitioners are partners within the meaning of section 5a of the Bankruptcy Act (11 U. S.C.A. § 23(a)."

The foregoing two cases are cited respectively in 8 C.J.S. Bankruptcy § 50, note 45 citing the *Fox* case supra, and id. § 51, page 713, note 63, citing the *Bowles* case.

If the foregoing reasoning and conclusions in Part I of this decision are sound, then even assuming that Bankruptcy No. 67–17 was a valid proceeding, plaintiffs' relief, if any is available, must be sought in the courts of the State, and therefore the Motion to Dismiss of the defendants should be granted, and the Motion for Summary Judgment on behalf of the plaintiffs should be denied.

On the other hand, if the Court's reasoning in Part II of this decision is sound, Bankruptcy No. 67–17 was a proceeding void on its face, and the same result is reached.

The foregoing will constitute the Court's Findings of Fact and Conclusions of Law.