GARZA, Circuit Judge:
 

 We have before us a case and an issue which, on a previous appeal, arrived and departed without resolution. On this appeal, we will consider the case and decide the issue.
 

 On January 23, 1975, the appellant, Consolidated Motor Inns [CMI], a Georgia limited partnership, filed a petition under Chapter XII of the “old” Bankruptcy Act, 11 U.S.C. § 906
 
 et seq.
 

 [1]
 

 Our appellee was one of approximately four hundred creditors. The proceedings were long and involved, generating a docket sheet of some forty-one pages.
 

 
 *1180
 
 On August 15, 1975, CMI proposed a “Plan of Arrangement” governing the treatment of claims made by this multitude of creditors. It set out the terms of payment, and provided for either the continued operation of CMI or the disposition of all of its property. We are told that the plan received the overwhelming support of the creditors.
 

 A hearing was held before the bankruptcy court on October 9th to consider the plan, and on October 15th that court entered an order confirming it. Pursuant to the order, checks were issued in payment to all creditors. Those returned or not claimed were paid into the registry of the district court.
 

 Among the terms of the plan was the following provision:
 

 Confirmation ... shall act as a bar to any creditor thereafter pursuing any claim it held or alleges to have held on January 23, 1975, against the partners thereof or their spouses, arising out of the business of the partnership.
 

 It was also provided that checks issued in payment would bear a restrictive endorsement to the effect that “acceptance, retention or endorsement ... by any payee who is a creditor affected by the arrangement shall constitute a full release of the Debtor, its individual general partners and their spouses ...” BVA Credit Corporation, our appellee on this appeal, is a creditor of the general partners and their spouses through contracts of individual guaranty executed by those partners and spouses, whereby they unconditionally guaranteed payment of an equipment lease contract entered by CMI. BVA did not assent to the plan of arrangement, and refused the payment tendered to it pursuant to the order of confirmation.
 

 Three creditors appealed to the district court from that order, challenging the validity of the above-quoted provisions: BVA, the First Pennsylvania Mortgage Trust, and Brand Development Corporation. BVA and First Pennsylvania dismissed their appeals, but Brand proceeded. It was rewarded with an order of the district court invalidating the discharge of the individual partners and their spouses. The court reasoned that where the individual partners had not themselves filed under Chapter XII, they had no standing to receive a discharge as contemplated by the plan of arrangement and order of confirmation.
 

 CMI appealed to this court. While the appeal was pending, however, Brand assigned its claim against CMI to a third party, and the assignee dismissed its claim against CMI in exchange for the debtor’s dismissal of a substantial counterclaim. The assignee then filed a motion here for substitution of the parties and dismissal of the appeal on the ground of mootness. CMI stated that it would agree to a dismissal if the order of the district court was vacated. This court dismissed the appeal without vacating the order below, and denied CMI’s subsequent motion to vacate. The debtor unsuccessfully petitioned the Supreme Court for certiorari.
 

 After the appellate process was inconclusively terminated, the bankruptcy court took up the district court’s order and remand, which had been left intact. Pursuant to that order, it voided any discharge of the individual partners, and required that all unnegotiated checks be voided and reissued without restrictive endorsement, bearing interest at the rate of 7% per annum from October 15, 1975.
 

 CMI appealed this order to the district court, which affirmed it in all respects. We are now confronted with an appeal from that judgment. It was stated on oral argument that the issue of the validity of the discharges or releases of the CMI partners and their spouses is the last to be disposed of in this matter. Awaiting our resolution of the issue is a suit brought by BVA against the partners and spouses for a deficiency judgment on the contracts of individual guaranty entered with BVA.
 

 On this appeal, CMI contends (1) that the bankruptcy court erred in strictly applying the remand order of the district court in view of the manner in which this court disposed of the first appeal; (2) that the original district court order voiding the dis
 
 *1181
 
 charges or releases was erroneous; (3) that the bankruptcy court erred by requiring unnegotiated checks to be reissued without restrictive endorsement on remand; and (4) that the bankruptcy court erred in ordering interest paid on the unnegotiated checks.
 

 BVA responds that the disposition of the first appeal was proper, and that the bankruptcy court acted correctly in its implementation of the original district court order after the first appeal was terminated. While the appellee has not briefed the validity-of-discharge issue on the merits, it does specifically rebut CMI’s argument that the order to reissue checks without endorsement and with interest was erroneous.
 

 REMAND AFTER THE FIRST APPEAL
 

 By complaining that the bankruptcy court erred in strictly applying the district court’s remand order after the first appeal was terminated, CMI in essence attacks this court’s refusal to vacate the district court order at the same time that the first appeal was dismissed as moot. We can only construe this argument as urging that the bankruptcy . court should have concluded that the court of appeals was wrong, and that it should have refused to apply the remand order on that basis.
 

 The refusal to vacate is called an “extreme departure” from the federal appellate practice of vacating a lower court order where the appeal from it has been dismissed on the ground of mootness.
 
 See United States v. Munsingwear,
 
 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950);
 
 Brownlow v. Scwartz,
 
 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620 (1923);
 
 Lebus v. Seafarers’ International Union,
 
 398 F.2d 281 (5 Cir. 1968).
 

 We will not decide whether or not the panel which considered the first appeal was correct in refusing to vacate, as, in any event, we cannot overturn a decision made by another panel.
 
 See Cavett v. Ellis,
 
 578 F.2d 567, 569 (5 Cir. 1978);
 
 Jacksonville Shipyards, Inc. v. Perdue,
 
 539 F.2d 533, 546 (5 Cir. 1976);
 
 Davis v. Estelle,
 
 529 F.2d 437, 441 (5 Cir. 1976). It is manifestly apparent that the bankruptcy court did not err in applying a district court order left intact after appeal, and that the district court did not err in affirming the bankruptcy court’s application of it. The bankruptcy court could hardly ignore the remand by deciding that the court of appeals was incorrect in refusing to vacate the district court order; in our system, lower courts do- not reverse higher ones.
 

 While we do not decide that the original district court order should have been vacated as a matter of appellate policy and reverse the orders before us on that ground, we are not precluded from taking up the validity-of-discharge issue where it is presented by this appeal. CMI asks us to consider an order applying a lower-court order never passed on by this court, and asserts that the holding of the original order was erroneous. Under these circumstances, we have the authority to examine the original ruling, and, if we find it indeed erroneous, to reverse the order applying it which is before us. We will accordingly proceed to determine whether the district court was correct in holding the discharge of the individual partners and their spouses to be invalid on its first consideration of this case.
 

 VALIDITY OF THE DISCHARGES
 

 The validity of the individual partners’ discharges will turn on our decision as to whether a provision of the first seven “straight bankruptcy” chapters of the Act is applicable to proceedings under Chapter XII, a “rehabilitative” chapter. The district court held the discharges to be invalid on the authority of § 5(j), located in the straight bankruptcy chapters at 11 U.S.C. § 23(j). It provides:
 

 The discharge of a partnership shall not discharge the individual partners thereof from the partnership debts. A general partner adjudged a bankrupt either in a joint or separate proceeding may, pursuant to the provisions of this title, obtain a discharge from his partnership and individual debts.
 

 CMI argued in the district court that § 402 of Chapter XII, 11 U.S.C. § 802,
 
 *1182
 
 renders § 5(j) inapplicable to this proceeding:
 

 The provisions of chapters 1 to 7 inclusive, of this title, shall, insofar as they are not inconsistent with the provisions of this chapter, apply to proceedings under this chapter.
 

 The crux of CMI’s position is that § 5(j) is fundamentally inconsistent with the rehabilitative purpose of Chapter XII.
 

 This inconsistency argument is based upon two general grounds. First, it is argued that while Congress intended that a partnership, standing alone and without the assets of its partners individually,
 
 [2]
 
 could file under Chapter XII, partners would have no incentive to utilize the chapter where the application of § 5(j) would prevent their individual discharge unless individual assets were made available for distribution. Second, CMI contends that partners, whose consent is required for a partnership Chapter XII filing,
 
 [3]
 
 could not reasonably be expected to give their consent where the effect would be to discharge the partnership but continue the liability of the general partners for any deficiency.
 
 [4]
 
 The thrust of the argument is that the scheme of rehabilitation afforded by Congress through Chapter XII is frustrated where the application of a general provision would effectively prevent its use by a partnership alone, as intended by Congress.
 

 
 *1183
 
 The district court rejected both asserted grounds of inconsistency. As to the first, it stated that partners would be as likely to submit
 
 their
 
 assets in a Chapter XII proceeding as in any other rehabilitative proceeding, “simply because their liabilities exceeded their assets and' they would very much like to be free of their debts and start anew.” On consideration of the second ground, the court agreed that a partnership discharge which leaves partners liable for a deficiency when less than 100% of debts are repaid under a plan “is not very sensible.” The short answer to this problem, in the court’s opinion, was for the partners themselves to file petitions under Chapter XII.
 
 [5]
 

 We disagree with the conclusion of the district court, as we find ample proof of an inconsistency between § 5(j) and Chapter XII to have been shown. Two propositions concerning Chapter XII are undisputed by the parties and the district court: (1) that a partnership as distinct from its partners may file a petition under Chapter XII; and (2) that under a plan agreed to by creditors and confirmed by the district court, less than 100% of the claim of each creditor may be repaid. When § 5(j) is applied as it was by the district court, one or more of these statutory purposes would be thwarted: the partners are logically compelled to file individually under Chapter XII to obtain a discharge for themselves, for if they do not, they will be individually liable for any deficiency caused by a plan which contemplates repayment of less than 100% of a claim.
 

 We will not construe the Bankruptcy Act in a manner which renders worthless a remedial procedure that Congress obviously intended to afford partnerships and their partners. Noting the difference between “liquidation-minded” proceedings under the straight Bankruptcy chapters and “re-organization-minded” administration via the rehabilitative chapters, federal courts have not hesitated in refusing to apply provisions of the former to actions under the latter where inconsistencies arise from these divergent purposes.
 
 See, e. g., Susquehanna Chemical Corp. v. Producer’s Bank & Trust Co.,
 
 174 F.2d 783, 786-87 (3 Cir. 1949) (Right of setoff under 11 U.S.C. § 108(a) held inconsistent with provisions of the rehabilitative chapters). Having found § 5(j) to be inconsistent with the terms of Chapter XII, we hold that the district court erred under § 402 in applying it to this case, and in striking the discharges agreed to by the creditors under the confirmed plan.
 
 [6]
 

 Our holding that the discharges were valid necessitates reversal of the
 
 *1184
 
 Bankruptcy Court’s order on remand as to the reissue of checks without restrictive endorsement, and with interest. The discharges, approved by a large majority of the creditors, were valid from the date the plan was confirmed, and related issues in this case must be resolved on that basis. We remand the cause to the Bankruptcy Court for proceedings consistent with our opinion.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . This proceeding is governed by the Bankruptcy Act of 1898, repealed in 1978 and replaced by the current version of Title II.
 
 See
 
 11 U.S.C. § 403(a), current version. All citations in this opinion will be made to the 1898 Act.
 

 [2]
 

 . The definition of “debtor” in Chapter XII, 11 U.S.C. § 806(6) makes it clear that a partnership, as distinct from its individual partners, can file a petition under the chapter:
 

 (6) “debtor” shall mean a person, other than a corporation as defined in this title, who could become a bankrupt under section 22 of this title, who files a petitiom [sic] under this chapter and who is the legal or equitable owner of real property or a chattel real which is security for any debt, but shall not include a person whose only interest in property proposed to be dealt with by the arrangement is a right to redeem such property from a sale had before the filing of such petition;
 

 11 U.S.C. § 22 provides, at subsection (a):
 

 (a) Any person, except a municipal, railroad, insurance, or banking corporation or a building and loan association, shall be entitled to the benefits of this title as a voluntary bankrupt.
 

 § 23 provides, by subsection (b):
 

 (b) A petition may be filed by one or more or all of the general partners in the separate behalf of a partnership or jointly in behalf of a partnership and of the general partner or partners filing the same:
 
 Provided, however,
 
 That where a petition is filed in behalf of a partnership by less than all of the general partners, the petition shall allege that the partnership is insolvent. A petition may be filed separately against a partnership or jointly against a partnership and one or more or all of its general partners.
 

 [3]
 

 . Bankruptcy Rule 12-8 provides:
 

 A petition may be filed pursuant to Rule 12 -6 or 12-7 by all the general partners on behalf of the partnership.
 

 The Advisory Committee’s note on Rule 12-8 reads:
 

 A partnership as such is a debtor capable of being bankrupt under § 4 of the Act [section 22 of this title] and thus is entitled to the benefit of Chapter XII [Chapter 12 of this title] pursuant to § 406(6) [section 806(6) of this title]. There is some question within the Act whether or not a partnership petition may properly be filed by less than all of the general partners. Under § 5 of the Act [section 23 of this title] and Bankruptcy Rule 105 a petition commencing a bankruptcy case may be filed by less than all of the general partners. This procedure, however, is more akin to an involuntary petition, requiring service of the petition on nonassenting partners and a hearing on adjudication, which is inconsistent with the voluntary nature of a Chapter XII case for arrangement. This rule requires a petition on behalf of a partnership to be filed by all of the general partners. This does not mean, necessarily, that all of the general partners physically execute the petition. While all must consent to the petition, less than all must execute the petition which would be on behalf of all. See 9 Collier ' 4.02 (1963).
 

 [4]
 

 .CMI gives the following example of how the district court ruling would affect the individual partners. Two alternatives, A and B, were posed by the plan of arrangement. Alternative A was the plan eventually confirmed by the Bankruptcy Court. Under A, CMI has sold its motel properties, and paid various classes of creditors less than 100% of their claims. Under B, CMI would have continued operating, and have paid less than 100%. CMI notes that the creditors in class XII would receive 60% of their claim under A, and 40% under B. The individual partners, once their discharges had been nullified, would then be personally liable for a 40% deficiency under A, and 60% under B.
 

 [5]
 

 . The district court took notice:
 

 While Bankruptcy Rule 105 abolishes the provisions of Sections 5(a) and (b) of the Bankruptcy Act, 11 U.S.C. § 23(a) and (b) allowing a joint petition, Rule 117(b) permits joint administration under these circumstances.
 

 [6]
 

 . We are aware of no other case squarely addressing this issue. While the district court cited two cases as holding § 5(j) applicable to Chapter XII, we find neither to be in point. In
 
 Acme Tool Incorporated v. Flesher,
 
 309 F.2d 636 (10 Cir. 1962), a partnership filed a voluntary petition under Chapter XII and an arrangement was confirmed. It contained no language purporting to discharge the partners. The case was cited for the following language:
 

 The complaint is that the quoted provision has the effect of discharging the individual general partners from the partnership debts. Counsel for the Trustees expressly disavows such effect and we agree that the order in question does not eliminate the liability of the general partners for partnership debts.
 

 The Bankruptcy Act provides that the discharge of a partnership does not discharge the individual general partners from the partnership debts. This provision is not inconsistent or in conflict with Chapter 12 and applies to proceedings thereunder. Hence, the confirmation of the arrangement and the discharge of the partnership could not as a matter of law release and discharge the individual partners, none of whom were parties to the Chapter 12 proceedings.” 309 F.2d at 636.
 

 Obviously, the court was merely holding that the discharge of a partnership filing alone under Chapter XII did not, as a matter of law, discharge the parties. Our case, involving a plan containing a discharge of partners provision, is a completely different situation. The general comment that § 5(j) would apply to a Chapter XII proceeding was mere dicta, and we find it unpersuasive.
 

 Ellis
 
 v.
 
 Yemen,
 
 324 F.Supp. 1314 (D.C.1971), is wholly irrelevant. That district court held that certain provisions of § 5 other than § 5(j) were applicable to Chapter XII.